Frank Sturla CANALE, Plaintiff,

v.

Christian C. YEGEN, Jason Semel, Yegen Holdings Corporation and Yegen Holdings Corporation Employee Stock Ownership Plan, Defendants.

Civ. No. 90–2409 (HLS).

United States District Court,
D. New Jersey.

Jan. 28, 1992.

As Amended Feb. 7, 1992.

Mark E. Belland, Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for plaintiff.

Robert A. Patria, Newark, N.J., Michael J. Dell, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendants.

## OPINION

SAROKIN, District Judge.

Before the court is defendants' motion for summary judgment dismissing all claims.

*Background*

This case arises out of the participation of plaintiff Frank S. Canale ("Canale") in an Employee Stock Ownership Plan ("the Plan") maintained by defendant Yegen Holdings Corporation ("Holdings"). Individual defendants Christian C. Yegen ("Yegen") and Jason Semel ("Semel") were officers and directors of Holdings and trustees and fiduciaries of the Plan.

The Plan was established in September, 1976 by Yegen Associates ("Associates"), a subsidiary of Holdings, and sponsorship was transferred to Holdings in or around 1981. It is undisputed that Canale, a Holdings employee, was vested in the Plan. Most of the Plan's assets were invested in Holdings common stock. Among Holdings' significant assets was the Integrity Financial Group, which was, as of the end of 1985, 80% owned by Holdings. Integrity Financial Group was the sole owner of the Integrity Insurance Company ("Integrity"). Plaintiff Exh. G.

In January 1986, the Plan trustees voted to terminate the Plan retroactively to October 1, 1985. Plaintiff Exh. L. Employees, including Canale, were notified of the termination by memorandum dated March 14, 1986. Plaintiff Exh. M. In March, 1986, Canale's employment at Holdings was terminated. By letter dated April 28, 1987, Canale was advised of an offer by defendants to pay him $17,182.01 in full discharge of his claims against the Plan. Plaintiff Exh. N. The letter stated that, since the last statement of the value of Canale's Plan account had been prepared for the plan year ended September 30, 1985, Holdings "has suffered serious financial reverses and the value of its stock is much reduced." The letter further stated:

While the most recent appraisal of the value of [Holdings'] stock showed a value of $34 per share at December 31, 1985 that value is no longer a true current value because the principal asset of [Holdings], consisting of 80% of the shares of the Integrity Financial Group, Inc., is now worthless due to the failure of the Integrity Insurance Company.

Plaintiff Exh. N.

Canale did not accept this offer. By letter dated May 12, 1986, Holdings informed Canale that his Plan balance had been $68,728.05 as of September 30, 1985; although the cover letter stated that it would "be unreasonable to anticipate that, given today's circumstances, the values attributable to this stock as of 12/31/84 are attainable today." Plaintiff Exh. F.

In July, 1988, a class action suit was filed against defendants by certain former Plan beneficiaries who alleged that defendants had breached their fiduciary duties as Plan trustees. Canale "considered [himself] at all times to be a potential member of the class." Canale Aff. at ¶ 6 (Plaintiff Exh. B). After a motion for class certification was denied on December 28, 1989, the suit was voluntarily dismissed with prejudice on June 27, 1990.

On February 14, 1990, Canale filed this lawsuit. Canale's amended complaint contains two counts. The First Count alleges that defendants breached fiduciary duties they owed to Canale as trustees of the Plan under 29 U.S.C. §§ 1104, 1105 & 1106. Specifically, plaintiff alleges that the individual defendants (1) "participated in decisions which substantially weakened the financial stability of Integrity Insurance"—a principal asset of defendant Holdings—"and failed to take any action to divest the holdings of the [Plan] to protect the Plaintiff" while the value of the assets of the Plan was "dropping dramatically;" (2) that the Board of Directors of Integrity, chaired by defendant Yegen, ordered it to pay a $5 million dividend to its sole stockholder, Integrity Financial Group, at a time when Integrity was "essentially insolvent," and that this action "caused a huge devaluation of the stock" held by the Plan; (3) that cash generated from the sale of Holdings subsidiaries "was not used to provide any cash" to the Plan, but was instead used to capitalize the nearly insolvent Integrity; (4) that from 1981 to 1985, the individual defendants "participated in the filing of false or misleading financial statements regarding Integrity Insurance and fraudulent inter-company transfers;" (5) that the individual defendants acted under a conflict of interest, serving their own ends at the expense of the Plan; (6) that they failed to take steps to diversify the Plan's assets; and (7) that self-dealing by the defendants caused "the depletion and near total loss of the value" of plaintiff's interest in the Plan. Complaint at ¶¶ 31–40. Plaintiff's Second Count seeks payment in full of the value of plaintiff's Plan account as of September 30, 1985, the closing date of the Plan year prior to his termination, or as of the termination of his employment.

*Discussion*

In order to prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that, viewing the facts in the light most favorable to the non-movant, the movant will prevail as a matter of law. Fed.R.Civ.P. 56. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 84 (3d Cir. 1987).

Defendants have moved for summary judgment on the grounds that the First Count of plaintiff's complaint fails to state a claim under the Employee Retirement Income Security Act ("ERISA"). Further, defendants contend that Canale's claim for breach of fiduciary duty is time-barred. Finally, defendants maintain that the Second Count is essentially a request for further benefits under the Plan, and must be dismissed for failure to exhaust the remedies provided by the Plan. The court will discuss each of these claims in turn.

*Breach of ERISA Fiduciary Duties*

For the purposes of assessing whether plaintiff has stated a claim for violation of ERISA fiduciary duties, his allegations fall into essentially three categories: (1) allegations of defendants' misbehavior while serving as Plan administrators; (2) allegations of their mismanagement of entities in which the Plan owned stock, including an alleged failure to distribute proceeds from asset sales to the Plan; and (3) allegations of fraudulent misconduct and concealment in the Individual Defendants' role as officers and directors of entities in which the Plan held equity interests.

Under ERISA, plan administrators, like defendants, assume fiduciary duties toward the plans they administer.[1] An ERISA fiduciary is statutorily required to:

discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

---

1. Under ERISA, "a person is a fiduciary with respect to a plan to the extent ... he ... exercises any authority or control respecting manage-ment or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan....

29 U.S.C. § 1104.

■ These duties apply equally to plan administrators who are also the officers of sponsoring corporations. However, such officers "assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Payonk v. HMW Industries, Inc.*, 883 F.2d 221, 227 (3d Cir. 1989) (*quoting Amato v. Western Union Intern., Inc.*, 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986)). A claim that alleges nothing more than mismanagement of entities in which the administrator serves as an officer or director is therefore not actionable under ERISA, even if the plan has an interest in the entity.

■ As defendants rightly contend, to the extent they may have participated in decisions regarding the distribution of proceeds from the asset sales, they were acting in their capacity as employees of Holdings, not as Plan fiduciaries. *See Payonk,* 883 F.2d at 229 (decision to terminate retirement plan was corporate management decision, not subject to ERISA fiduciary obligations); *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 828 F.2d 710 (11th Cir.1987) (decision to pay business expenses rather than insurance premiums was corporate matter, not subject to ERISA fiduciary duties). Accordingly, defendants are not subject to ERISA liability for any decisions they may have made regarding the asset sale proceeds. Plaintiff's claim that defen-

dants breached their fiduciary duties by failing to distribute the asset sale proceeds to the Plan will therefore be dismissed as failing to state a claim cognizable under ERISA.

■ In contrast, plaintiff's claim that defendants failed to diversify the Plan's holdings concerns actions undertaken by defendants in their capacity as plan administrators, not as managers conducting a business.[2] ERISA states that in the case of an employee stock ownership plan ("ESOP"), such as this, "the diversification requirement [that plan fiduciaries diversify plan investments so as to minimize the risk of large losses] and the prudence requirement (only to the extent that it requires diversification) [that plan fiduciaries act with the care, skill, prudence, and diligence of a prudent man in the circumstances] is not violated by acquisition or holding of qualifying ... employer securities." 29 U.S.C. § 1104(a)(2). However, as the District of Columbia Circuit Court has held, these provisions merely entail that "[a]cquisition of employer securities ... does not, in and of itself, violate any of the absolute prohibitions of ERISA." *Fink v. National Savings and Trust Co.*, 772 F.2d 951, 955 (D.C.Cir.1985). This provision does not mean that failure to diversify pension assets invested in employer securities can *never* constitute a breach of ERISA fiduciary duties:

the requirement of prudence in investment decisions and the requirement that all acquisitions be solely in the interest of plan participants continue to apply.... The investment decisions of a profit sharing plan's fiduciary are subject to the closest scrutiny under the prudent person rule, in spite of the "strong policy and preference in favor of investment in employer stock."

*Id.* at 955–56 (citations omitted). Thus, the allegation that a Plan administrator has failed to prudently diversify plan assets

---

**2.** Defendants contend that plaintiff effectively waived this claim in his deposition testimony. Def. Reply at 19–20; Canale Dep. at 227–28. However, that plaintiff was unable in a deposition to propose any specific investment actions that defendants could have taken does not constitute waiver of the claim that defendants breached fiduciary duties owed to plaintiff to diversify investments and minimize the risk of large losses.

invested exclusively in the stock of the beneficiaries' employer can state a claim for breach of fiduciary duties under ERISA.

■ This court now concludes that, under the circumstances of this case, plaintiff's allegations concerning defendants' failure to diversify ESOP assets does state a claim for breach of ERISA fiduciary duties. Plaintiff's complaint alleges that defendants were not only aware of the deteriorating condition of Integrity, but fraudulently concealed that condition by falsifying financial statements and engineering spurious and unlawful transfers among companies controlled by defendants, including the $5 million dividend payout, to support their fraudulent financial reporting. By taking these actions, defendants allegedly materially increased the risk of the ESOP's investment in Holdings by operating its subsidiaries unlawfully, and dissipated the Plan's assets by artificially and unlawfully prolonging Integrity's life at a time when it was financially impaired and statutorily insolvent, thereby increasing the magnitude of Integrity's losses. The court concludes that, under these circumstances, where plaintiffs have alleged that the value of the plan's investment was impaired by the plan fiduciaries' own fraudulent and illegal acts, allegations of failure to diversify plan assets invested in an ESOP can state a claim under ERISA.

■ It might be argued that the fraudulent misconduct alleged herein concerns only misconduct in defendants' role as officers and directors of entities owned by the Plan, not in their function as Plan administrators. Such an argument, however, misconceives the gravamen of plaintiff's complaint. Plaintiff charges that defendants failed to diversify the Plan's assets and dissipated those assets—allegations relating to defendants' role as Plan administrators. Defendants can be charged with knowledge of the allegedly fraudulent acts of Integrity, its officers and directors, because defendants are the very individuals alleged to have performed or ordered the fraud allegedly perpetrated by Integrity. However, the basis for this ERISA action is not the perpetration of the fraud on Integrity's shareholders itself, but the fact that, knowing the Plan's investment had been impaired by their own fraudulent acts, defendants, acting as fiduciaries, failed to take any steps to protect the Plan's assets from dissipation. To the contrary, defendants allegedly served their own ends at the expense of the Plan by committing the Plan's assets to the service of their fraudulent scheme, thereby furthering their own illegal purposes while endangering the Plan's investment.[3]

■ Thus, this court need not and does not reach the question of whether any action that would ground a shareholder derivative action against directors or officers of a company will also ground an ERISA action, where the same individuals are plan fiduciaries and the plan holds an interest in

---

**3.** Because defendants can be charged with knowledge of their own allegedly fraudulent conduct with respect to Integrity, the complaint also states a claim for breach of ERISA fiduciary duties for defendants' failure to bring a derivative action on behalf of the Plan as a Holdings shareholder. It is clear that an ERISA fiduciary has a "duty to take reasonable steps to realize on claims held in trust." *Donovan v. Bryans,* 566 F.Supp. 1258, 1262 (E.D.Pa.1983); *see also Nedd v. United Mine Workers,* 556 F.2d 190, 197 (3d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978) (where "trustee [of a union pension fund] may sue" to collect and prevent delinquent obligations to the funds and "wrongfully fails to do so, the beneficiary may sue the trustee as well as the party or parties the trustee failed to sue"); *In re San Juan Hotel Corp.,* 71 B.R. 413 (D.P.R.1987) (trustee who wrote off collectible accounts and failed to investigate misappropriation of trust property of corporation, of which he had notice, was surcharged for losses caused to trust); *Societa Operaia di Mutuo Soccorso Villalba v. Di Maria,* 40 N.J.Super. 344, 122 A.2d 897 (Chan.Div.1956) ("[w]here a trustee's delay in enforcement of an obligation due the estate has caused it to become uncollectible, he will be surcharged therefore;" action for unpaid rent) (citations omitted); William F. Fratcher, IIA *Scott on Trusts* § 177 at 489 (1987). As plan fiduciaries, defendants may have had an obligation to bring a derivative action if they were aware that the officers and directors of the entities whose stock was held by the ESOP had breached fiduciary duties owed their shareholders; that this would require defendants to bring suit against themselves does not relieve them of their fiduciary duties under ERISA.

the company. For the purposes of this motion, the court merely holds that where plan fiduciaries can be charged with knowledge of fraudulent actions undertaken by an entity in which the plan has invested; and a reasonably prudent person acting in a like capacity would conclude that those fraudulent acts threaten to impair and diminish the value of the plan's investment; and the plan administrator has a personal interest in the accomplishment of those fraudulent acts; and the plan administrator conceals the fact that those acts have occurred; and he or she fails to protect the plan's assets from loss or dissipation resulting from the fraud perpetrated by or on the entity in which it has invested, then the administrator will be liable, under ERISA, for breach of his or her fiduciary duties, notwithstanding the fact that the plan is an "eligible individual account plan," or ESOP, within the terms of 29 U.S.C. § 1104(a)(2).

*The Statute of Limitations*

Defendants have also moved to dismiss Canale's claim for breach of fiduciary duty on the basis that the claim is time-barred. Claims under ERISA are subject to the statute of limitations set forth in 29 U.S.C. § 1113. This section provides that:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

■ Under this standard, the court concludes that even if plaintiff's claims regarding defendant's alleged failure to distribute the proceeds of asset sales to the Plan

stated a cause of action, that claim would be barred as untimely. In order to charge a party with actual knowledge of an ERISA violation, it must be shown that the party had "knowledge of the transaction that constituted the alleged violation." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir.1985) (citation omitted). It is therefore the nature of the violation alleged that determines the elements of "actual knowledge" in any particular instance.

■ Insofar as defendants' alleged breach of fiduciary duty consisted of failure to allocate a portion of revenues generated by the sale of assets to the Plan, the transaction constituting the alleged violation occurred at the time defendants realized cash gains from the sale of assets and failed to assign any portion of them to the Plan. *See Ziegler v. Connecticut General Life Insurance Company*, 916 F.2d 548, 551–52 (9th Cir.1990) (actual knowledge, not actual harm, triggers statute of limitations under ERISA; plaintiff "need never have suffered an actual harm for its ERISA cause of action to have accrued. When [plaintiff] suffered actual harm is therefore irrelevant"); *Lindahl v. American Tel. & Tel. Co.*, 609 F.Supp. 267 (N.D.Ill.1985) (statute of limitations had run where "more than three years passed from the date plaintiff actually learned of the facts comprising the alleged ERISA violation"). The alleged violation in this case is somewhat unusual because it included an omission: defendants' failure to assign funds derived from asset sales to the Plan. "Actual knowledge" of the alleged breach must therefore include knowledge of the fact that defendants had determined not to set aside any funds from asset sales for the Plan. *See Ziegler*, 916 F.2d at 552 (attributing actual knowledge to plaintiff that defendant would not disburse funds in the future).

Given Nolan's reported response to Canale's 1984 inquiry, that Plan beneficiaries would "be taken care of," it would be improper to conclude that Canale necessarily possessed actual knowledge, at that point, of the transaction constituting the alleged

breach.[4] However, by June of 1985, Canale avowedly was concerned about the consequences of the sale of particular assets; knew that no distribution of the asset sale proceeds had been made to the Plan; had told defendants he thought their conduct constituted a breach of fiduciary duties; and was unconvinced by Yegen's attempted assurances that "it would be taken care of."[5] Further, Canale has not claimed to have believed at any subsequent time, whether because of defendants' assurances or some other reason, that the asset sale proceeds would be proportionately distributed to the Plan.

Under these circumstances, it may be concluded that Canale had actual knowledge that the asset sales had occurred, and that proceeds from them would not be distributed to the Plan, as of June, 1985.[6] That plaintiff may have only believed he would receive substantially less than his 1985 Plan balance when he read defendants' letter of April 28, 1987, is irrelevant to determining when Canale had actual knowledge of defendant's failure to distribute the asset sale proceeds. Plaintiff Mem. at 23; Canale Dep. at 66.

The statute of limitations on claims based on defendants' alleged breach of fiduciary duty in the distribution of the proceeds of the asset sales thus ran, at the latest, from June 1985. Plaintiff contends that the pendency of the class action against defendants, of which Canale "considered [himself] at all times to be a potential member," tolled the statute of limitations. Canale Aff. at ¶ 6 (Plaintiff Exh. B). In general, the filing of a class action tolls the running of the applicable statute of limitations for all putative class members. *American Pipe and Construction Company v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Canale has testified that he intended to be a part of the class suit, Canale Dep. at 109, and defendants assume for the purposes of this motion that the class action tolled the statute. Def. Reply at 21, n. 11.

Even if the class action did toll the statute, however, it would make no difference to the timeliness of the present action. Canale filed this lawsuit on February 14, 1990, four years, seven months, and two weeks after the time, in June, 1985, when he acquired actual knowledge of the al-

4. At some point in 1984, Canale raised this conflict of interest with John Nolan, the President of Yegen Associates. *Id.* at 59. Canale asked Nolan "why would we not receive into the employees stock option plan the proportionate share of funds that were forthcoming or that had come from" a recently sold asset. According to Canale, Nolan replied that "it was discussed with [defendants] and that at a later date after the sale of other companies that we would be taken care of," by which Canale interpreted him to mean that beneficiaries like Canale would be paid their proportionate share of the Plan's appraised value. *Id.* at 60–61.

5. In a conversation in mid–1985, Canale asked Yegen "what was happening with" amounts realized from the sale of certain assets. *Id.* at 34–35. According to Canale, Yegen told him "don't worry about it, it will be taken care of." Canale testified that this assurance did not reduce, but increased his concerns. *Id.* In May or June of 1985, Canale asked Nolan "what was going on" with the Plan, and Nolan's inability to answer also raised Canale's concerns. *Id.* at 42–44. In June of 1985, Canale had another conversation with Nolan in which Canale asked why certain funds resulting from asset sales had not been set aside for Plan beneficiaries. In this conversation, Canale expressed his view that defendants were breaching their fiduciary duties in failing

to do so, and, according to Canale, Nolan responded that he also thought that defendants might have breached their fiduciary duties. *Id.* at 64–65.

6. No evidence has been submitted to this court that all of the asset sales were completed by June 1985 or that Canale was aware of this fact. Canale has merely testified that defendants "had already sold everything that was worth anything" in 1985. Canale Dep. at 228. However, even if major asset sales occurred between July 1985 and January 1, 1986, the court is satisfied that the pattern of asset sales without distribution to the Plan was sufficiently well-established by June 1985 at the latest as to put plaintiff on notice that defendant did not intend to redistribute the proceeds of asset sales to the Plan. Accordingly, for the purpose of this cause of action, the statute of limitations ran, at the latest, from June 1985, even with regards to asset sales, if any, occurring between June and December 1985. *Phillips v. Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir.1991) (where plaintiff alleged "a series of breaches, all ... of the same character," the statute of limitations ran from the first breach).

leged breach. The class action was pending for nearly 1 year and six months, from its date of filing, on July 5, 1988, to the date class certification was denied on December 28, 1989. Even allowing for tolling by the class suit, the present action was thus filed one and a half months after the statute of limitations had run. Accordingly, any action based on alleged violations concerning the asset sales is time-barred under 29 U.S.C. § 1113.

■ However, plaintiff's other claims under Count 1—alleging that defendants failed to diversify the Plan's holdings despite defendants' knowledge that Integrity's financial condition was deteriorating due to their own fraudulent acts—are comfortably within the six-year statute of limitations applicable to acts of fraud and concealment under the statute. Canale filed the present complaint on February 14, 1990. Although plaintiff stated in his deposition that he was aware that defendants were selling Holdings subsidiaries in 1984, and that he felt their failure to distribute the Plan's "proportionate share" of the asset sale proceeds constituted a conflict of interest and breach of fiduciary duty, this knowledge does not amount to discovery of defendants' alleged acts of fraud and concealment. Canale Dep. at 58–59, Def. Memo. at 20. Defendants point to no other conversation or event, prior to February 14, 1984, indicating that plaintiff actually discovered or ought to have discovered the fraud and concealment it alleges. Therefore, the court concludes that plaintiff's allegations that defendants concealed the information that would have lead a prudent person in a like capacity to seek to diversify Plan assets and prevent their dissipation, and fraudulently failed to take steps to protect those assets, is not barred by the applicable six-year statute of limitations.[7]

*Failure to Exhaust*

■ Defendant asserts that plaintiff's second count, seeking recovery of benefits allegedly due him under the Plan or clarification of his rights to future benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B), must be dismissed for failure to exhaust plan remedies. A federal court will not entertain an ERISA claim for payment of benefits unless the plaintiff has exhausted his remedies under the plan. *See, e.g., Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990) (affirming district court's dismissal of suit, where plaintiff failed to appeal an adverse benefit determination to the plan administrator, as permitted under the plan).

■ The procedure for collecting benefits under Holdings' Plan was set forth in the summary plan description under the heading "How to File a Claim:" "[w]hen an application for benefits is made you should notify the employer who in turn will advise the Trustee." Dell Aff., Exh. V. Under the heading "Claims Review Procedure," the summary description further provides:

> If an application is denied, the claimant or claimant's beneficiary upon written request is entitled to a review of the decision by the Trustee. Specific information regarding the procedure to be followed for requesting such review can be obtained from the Trustee.

*Id.* Defendant contends that, because plaintiff failed to present his claim for benefits to his employer and failed to appeal a denial to the trustee, he has not exhausted his plan remedies.

Canale offers two primary defenses to this contention. First, Canale maintains that his attorney submitted a formal claim to defendants for Canale's benefits by letter dated December 3, 1987. Plaintiff Mem. at 39. However, plaintiff submits in evidence of this claim only a letter to the Plan's insurer, demanding "damages suffered by [plaintiff] during the coverage period" of the policy, and a letter to Yegen, requesting certain documents. Plaintiff Mem. Exh. P. Although the former letter was copied to "Yegen Holdings Corporation," neither it nor the letter to Yegen represents a notification to Canale's employer that he is applying for benefits. Further, even had either letter constituted

---

7. Once more, it is irrelevant whether the statute of limitations was tolled by the pendency of the class action; the court therefore does not decide this issue.

such a demand, it is undisputed that Canale never appealed denial of such a demand to the Trustee.

Second, plaintiff maintains that he was not required to exhaust his remedies since resort to administrative remedies would have been "futile." Plaintiff Mem. at 40, n. 17. However, defendants' letter of April 28, 1987, offering Canale $17,182.01 in settlement of his claims under the Plan, does not demonstrate that an application for further benefits would have been futile. Application pursuant to the Plan's administrative procedures might well have furthered the Congressional purpose in mandating internal claims procedures, "to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." *Makar v. Health Care Corp. of Mid–Atlantic (Carefirst)*, 872 F.2d 80 (4th Cir.1989) (citation omitted). Further, as the Seventh Circuit has held, the fact that an administrative procedure under ERISA cannot afford the claimant the full relief sought in a lawsuit will not excuse the exhaustion requirement. *Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1246 (7th Cir.1983) (requiring exhaustion of administrative remedies despite fact that full remedy of reinstatement was not available).

■ In order to merit waiver of the exhaustion requirement a claimant must provide not merely "bare allegations of futility," but a " 'clear and positive' showing of futility." *Makar*, 872 F.2d at 83 (citations omitted); *see also Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund*, 590 F.Supp. 211, 215 (E.D.Pa.1984) (rejecting claim of futility, where fund did not notify claimants of their right to appeal an adverse determination); *Grumbine v. Teamsters Pension Trust Fund*, 638 F.Supp. 1284, 1287 (E.D.Pa.1986) (rejecting claim of futility in application for disability retirement benefit, where plan failed to provide claimant plan documents and infor-

mation concerning her claim, and where claimant's application for pension benefits had already been denied). Plaintiff has made no such showing here.[8] Accordingly, because Canale's claim does not fall within the "limited circumstances" permitting waiver of the exhaustion requirement, the second count of his complaint will be dismissed. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990).

### Conclusion

For the foregoing reasons, defendant's motion to dismiss Count 1 of plaintiff's complaint is granted with respect to plaintiff's allegations regarding the distribution of asset sale proceeds and denied with respect to plaintiff's allegations of imprudent failure to diversify and prevent dissipation of Plan assets; and defendant's motion to dismiss Count 2 of plaintiff's complaint is granted.

---

**8.** The court does not rule on plaintiff's contention that requiring exhaustion of remedies is within the court's discretion. Plaintiff Mem. at 39. Even if this determination were in the court's discretion, the court would not waive the exhaustion requirement in this case, given plaintiff's failure to avail itself of the plan's administrative process to any degree.