Lynn MARTIN, Secretary of Labor,
United States Department of
Labor, Plaintiff–Appellant,

v.

Harvey N. FEILEN, Armin P.W. Thielking, Paul W. Thielking, Stephen K. Thielking, John L. Henss, R & N Garage Company, Lakewood Marine Ltd., Paul W. Thielking, O.D., P.C., John L. Henss, C.P.A., Oden, Henss & Thielking, and Capitol Resources Corporation, Defendants–Appellees.

Lynn MARTIN, Secretary of Labor,
United States Department of
Labor, Plaintiff–Appellee,

v.

Harvey N. FEILEN; Armin P.W.
Thielking; Defendants,

Paul W. Thielking, Stephen K.
Thielking, John L. Henss,
Defendants–Appellants,

R & N Garage Company, Lakewood
Marine Co., Defendants,

Paul W. Thielking, O.D., P.C., Stephen K. Thielking, C.P.A., P.C., John L. Henss, C.P.A., Oden Henss, & Thielking, Capitol Resources Corporation, Defendants–Appellants.

Nos. 91–1086, 91–1295.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1991.

Decided June 3, 1992.

James L. Craig, Washington, D.C., argued (Robert P. Davis, Marc I. Machiz, Karen L. Handorf and Marcia E. Bove, on the brief), for plaintiff-appellant.

Steven Udelhofen, Des Moines, argued (A.P.W. Thielking, on the brief), for defendants-appellees.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

In this case the Secretary of Labor urges us to conclude that controlling stockholders

and directors of Feilen Meat Company ("FMC"), and the company's accountants, breached their fiduciary duties under ERISA [1] when they engaged in complex financial transactions that destroyed the company, thereby wiping out the employees' stock ownership plan. The Secretary appeals the district court's judgment that defendants committed many breaches of fiduciary duty but did not cause money damage to the plan. We construe defendants' fiduciary duties more narrowly than did the district court. However, we also conclude that the Secretary may recover money damages on behalf of the plan for the breaches of duty that did occur. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

FMC conducted beef boning and breaking operations in Des Moines, Iowa. Before the events in question, FMC employed approximately fifty unionized workers, posted modest annual profits, and carried little if any debt. FMC established an employee profit-sharing plan in the late 1960s. In May 1974, with the employees' approval, FMC created the Feilen Meat Co. Employee Stock Ownership Plan (the "ESOP") which soon took over the assets of the profit-sharing plan. By 1981, the ESOP owned twenty-eight percent of FMC's stock. That stock was the ESOP's only asset.

Harvey Feilen founded FMC and was its primary stockholder and the ESOP's sole trustee until the fall of 1977, when he sold his controlling interest to his son Nick and defendants A.P.W. Thielking and Dr. Paul W. Thielking. Neither A.P.W., a retired insurance broker, nor Paul, an optometrist,

had any experience in the meat industry, and neither participated in the daily operations of FMC as directors. This leveraged buy-out transaction was proposed and structured by FMC's accountant, defendant John Henss, who had also proposed and structured the ESOP. A.P.W. and Paul are the father and uncle of defendant Stephen Thielking, Henss's partner at defendant Oden, Henss & Thielking ("OHT"), the accounting firm that served FMC throughout the period in question. [2]

Nick Feilen became the ESOP's sole trustee in November 1977. A.P.W. became a co-trustee in May 1982. Nick settled separately with the Secretary and was the government's lead trial witness. Nick testified that he had no real understanding of an ESOP trustee's duties and relied heavily on Henss's advice, and that the OHT accountants made all valuation decisions relating to the ESOP's transactions in FMC's stock.

Beginning with the leveraged buy-out in 1977, and ending with FMC's demise in February 1985, the corporate insiders engaged in a complex series of transactions involving FMC, its stockholders, related entities, and in some cases the ESOP. The transactions challenged by the Secretary were done at the recommendation of Henss and Stephen Thielking, who had personal financial interests in many of the transactions in addition to their role as FMC's outside accountants. A.P.W. and Paul Thielking were FMC directors who also stood to gain personally from many of the transactions, but the record does not otherwise reflect their personal involvement in managing or investing the ESOP's assets.

---

1. The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

2. The additional defendants are personal corporations used by the individual defendants to conduct their business affairs. The district court held that John L. Henss C.P.A., P.C.; Stephen K. Thielking, C.P.A., P.C.; Paul W. Thielking O.D., P.C.; and Lakewood Marine Ltd. (for A.P.W.) were the alter egos of their respective owners. The record supports the district court's conclusion to pierce these corporate veils under Iowa law. *See Lakota Girl Scout Council, Inc. v.*

*Havey Fund–Raising Mgmt., Inc.,* 519 F.2d 634, 638 & n. 4 (8th Cir.1975); *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.,* 412 N.W.2d 593, 597–98 (Iowa 1987); *Murray v. Conrad,* 346 N.W.2d 814, 820 (Iowa 1984). *See also Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974) (court of equity may disregard the corporate form "in the interests of justice where it is used to defeat an overriding public policy"). However, we do not agree with the district court's finding that OHT was the alter ego of Henss, *see* p. 669, *infra.*

The various self-dealing transactions were intended to provide diversification and tax benefits to FMC and its stockholders, including the ESOP. Instead they brought ruin, although defendants insist that FMC failed because of adverse conditions in the meat industry. When FMC closed its doors, its employees lost both their jobs and the entire value of their retirement accounts in the ESOP.

The Secretary brought this action in February 1988, charging that defendants breached their fiduciary duties under §§ 404, 405 and 406 of ERISA, 29 U.S.C. §§ 1104–06.[3] After a two-week trial, the district court held that all of the defendants were ERISA fiduciaries who had breached their fiduciary duties of undivided loyalty and prudence with respect to many of the transactions at issue. The court rejected the Secretary's claim that defendants had engaged in prohibited transactions in violation of § 1106 because "the transactions in which the ESOP purchased or sold shares of FMC stock ... were for adequate consideration"; the Secretary has not appealed that ruling. The district court declined to award damages because the Secretary failed to prove that the breaches of fiduciary duty proximately caused measurable monetary loss to the ESOP. The court permanently enjoined defendants "from serving directly or indirectly as fiduciaries of any ESOP" but did not enjoin the accountant defendants from acting as service providers to ERISA plans.

Both sides timely appealed. The Secretary argues (i) that A.P.W. and Paul Thielking breached their ERISA fiduciary duties in misappropriating a stock option belonging to FMC, an issue the district court did not address; and (ii) that the district court erred in failing to award money damages for losses to the ESOP, and in declining to

enjoin Henss, Stephen Thielking, and OHT from acting as service providers to any ERISA plan. In their cross appeal, appellees argue that they were not ERISA fiduciaries, that ERISA does not apply to FMC business transactions, and that no fiduciary duties were breached.

## II. An Overview

Borrowing from trust law, ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets. The ERISA fiduciary is subject to a strict standard of care, 29 U.S.C. § 1104(a)(1);[4] is liable for known breaches of co-fiduciaries, § 1105; and may not engage in prohibited transactions, § 1106.

An ESOP is an ERISA plan which invests primarily in "qualifying employer securities," typically stock of the employer creating the plan. § 1107(d)(6)(A). Congress expressly intended that the ESOP would be both an employee retirement benefit plan and a "technique of corporate finance" that would encourage employee ownership. *See* 129 Cong.Rec. S16629, S16636 (Daily ed. Nov. 7, 1983) (statement of Sen. Long). The concept has been roundly criticized, particularly because, as this case graphically illustrates, an ESOP places employee retirement assets at much greater risk than does the typical diversified ERISA plan. *See generally* Note, *The False Promise of Worker Capitalism: Congress and the Leveraged Employee Stock Ownership Plan*, 95 Yale L.J. 148, 154 (1985). But that is a question for Congress.

To promote and subsidize use of ESOPs, Congress included specific ESOP provisions in both ERISA and the Internal Revenue Code.[5] In 1979, in issuing proposed regula-

---

**3.** The Secretary is specifically empowered to bring such an action, *see* 29 U.S.C. § 1132(a)(2).

**4.** More specifically, this section provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:
  (i) providing benefits to participants and their beneficiaries; and ...

(B) with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims...."

**5.** For example, the tax Code exempts 50% of a qualified lender's interest income from loans made to finance an ESOP's acquisition of employer stock, 26 U.S.C. § 133. The Code also

tions, the Secretary stated that the statutory exemptions for ESOPs in ERISA

> do[ ] not relieve a fiduciary ... from the general fiduciary responsibility provisions of [§ 1104] which, among other things, require a fiduciary to discharge his duties respecting the plan solely in the interests of plan participants and beneficiaries and in a prudent fashion ... nor does it affect the requirement ... that a plan must be operated for the exclusive benefit of employees and their beneficiaries.

44 Fed.Reg. No. 168, at p. 50369 (Aug. 28, 1979). In general, that may be true. But the special statutory rules applicable to ESOPs inevitably affect the fiduciary's duties under § 1104. For example, an ESOP is exempted from ERISA's duty to "diversify the investments of the plan," §§ 1104(a)(1)(C) & (2). Without this exemption, an ESOP fiduciary would breach a statutory duty to diversify by investing only in the employer's stock. Of great significance to this case, § 1108(e)(3)(A) exempts an ESOP's transactions in the employer's stock from ERISA's strict prohibitions against dealing with a party in interest, and against self-dealing, that is, "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1); *see also* 29 C.F.R. § 2550.408e(a). Indeed, an ESOP may borrow *from the employer* to buy the employer's stock, § 1108(b)(3), another type of transaction from which ERISA prohibits non-ESOP fiduciaries. *See Donovan v. Cunningham*, 716 F.2d 1455, 1464–66 & n. 24 (5th Cir.1983).

The Secretary's approach to the ESOP issues in this case is fundamentally flawed. On the one hand, she ignores the statutory ESOP exemptions, arguing broadly that defendants violated their fiduciary duties simply by engaging in "self dealing" and "conflicts of interest." On the other hand, because the ESOP's only asset was FMC stock, the Secretary argues that defendants' ERISA fiduciary duties were implicated by every FMC corporate transaction

that "affected" the value of that stock. From this premise, the Secretary concludes that defendants are personally liable to the ESOP for running the company into the ground.

The district court's decision paints with the Secretary's broad brush. The court held that defendants breached their § 1104 duties "when they engaged in transactions affecting the ESOP that involved self-dealing and conflicts of interest," but awarded no damages because these transactions did not "cause FMC to go out of business or cause any measurable loss in value of FMC stock."

We conclude that this sweeping approach is inconsistent with the specific ESOP exemptions in the statute. Rather, ERISA requires specific analysis of what FMC transactions sufficiently involved the ESOP to implicate ERISA fiduciary duties. Then, for each covered transaction, there must be specific findings as to who were responsible fiduciaries, whether any fiduciary duties were breached, and if so, what the appropriate remedy should be. Because the district court did not make findings on many of these issues, this case must be remanded for further proceedings. First, however, we will apply our analysis of the statute to the findings and conclusions the district court did make.

### III. What Transactions Are Covered

■ An employer's business decisions will often indirectly affect an ERISA plan or its beneficiaries. Are the persons who make such corporate decisions potentially liable under § 1104 if they also happen to be ERISA fiduciaries? In *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988), we held that " 'ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.' " (quoting *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986)).

In *Hickman*, the defendants, who were both company executives and plan fiduciaries, refused to allow plaintiffs to remain on

---

permits an employer to deduct dividends paid on stock held by an ESOP, 26 U.S.C. § 404(k).

Not surprisingly, the lure of tax benefits drove some of the transactions at issue in this case.

the payroll after a plant was sold so that they could become eligible for early retirement benefits. Plaintiffs sued, arguing that defendants had a duty as plan fiduciaries to act in the manner most beneficial to plan participants. We held that defendants were not subject to ERISA's fiduciary duty requirements because their action was a "day-to-day corporate business transaction" made in their capacity as corporate officers, not as plan administrators. 840 F.2d at 566–67.[6]

Ignoring *Hickman,* the Secretary argues that ERISA's fiduciary duties apply to "all decisions that will affect the pension plan," citing *Schaefer v. Arkansas Med. Soc'y,* 853 F.2d 1487, 1491 (8th Cir.1988). However, *Schaefer* involved a change in benefits that left the plan seriously underfunded, a plan administration decision clearly covered under the *Hickman* test.

We conclude that *Hickman* applies with equal force when the ERISA plan is an ESOP. Virtually all of an employer's significant business decisions affect the *value* of its stock, and therefore the benefits that ESOP plan participants will ultimately receive. However, ERISA's fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan. *Accord, Canale v. Yegen,* 782 F.Supp. 963, 967 (D.N.J.1992). A broader rule would make ESOP fiduciaries virtual guarantors of the financial success of the plan (which is indeed the result the Secretary seeks in this case). We cannot reconcile such broad liability with the congressional intent to encourage the use of ESOPs as a "technique of corporate finance."

The district court did not apply the *Hickman* standard to the specific transactions at issue, concluding instead that appellees breached their fiduciary duties under § 1104 when they "engaged in unwise business transactions that were intended pri-marily to inure to the benefit of the fiduciaries themselves." However, the record on appeal permits us to separate transactions subject to ERISA from those that are not under *Hickman.*

*Transactions Subject to ERISA.*

■ ● OHT was a partner in Imperial Investments. Imperial owed $1.4 million to Central Federal Savings & Loan on a real estate construction loan payable over twelve years at 15% interest. In August 1981, FMC assumed Imperial's monthly payments of $21,014 to Central Federal. In exchange, FMC received $1.4 million in real estate contracts payable over twenty years at 13% interest, or $16,400 per month. FMC then transferred the assumed obligation to the ESOP for 81 shares of FMC stock.

The Secretary argues that appellees manipulated the price of FMC stock in this transaction. FMC valued each share sold to the ESOP at $17,360, the full market value. However, one month later, FMC sold shares to Henss and Stephen Thielking at a 20% minority discount ($13,888.89/share). Since this transaction involved the ESOP's purchase of FMC stock, under *Hickman* responsible fiduciaries are liable for any breach of their ERISA duties.

● On October 1, 1981, FMC sold 36 shares of its stock to Henss and Stephen for $13,888.89 per share, reflecting the 20% minority discount. The next day, FMC declared a dividend of $9,000 per share, immediately yielding Henss and Stephen a substantial portion of their purchase price in cash. The ESOP's dividend was 73 FMC shares, priced at the full market value of $17,360. FMC's sale of stock to Henss and Stephen did not involve investing the ESOP's assets, but the subsequent FMC dividend did. If the ESOP's purchase price was wrongfully manipulated, then fiduciaries responsible for the manipulation are subject to § 1104 liability.

6. *See also Adams v. LTV Steel Mining Co.,* 936 F.2d 368, 370 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 968, 117 L.Ed.2d 134 (1992); *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 918–19 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. dism'd,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *United Paperworkers Int'l Union v. Jefferson Smurfit Corp.,* 771 F.Supp. 992, 999 (E.D.Mo.1991), *aff'd,* 961 F.2d 1384 (8th Cir.1992); *Moehle v. N.L. Ind., Inc.,* 646 F.Supp. 769, 779 (E.D.Mo.1986), *aff'd,* 845 F.2d 1027 (8th Cir.1988).

● On November 1, 1981, all FMC stockholders except the ESOP exchanged their FMC shares for newly issued shares of Capital Resources Corporation (CRC), a corporation controlled by Henss. After this exchange, the ESOP owned 53.9% of FMC's outstanding stock. On January 2, 1982, CRC purchased 105.09 shares from the ESOP by assuming the ESOP's liability to Central Federal for the Imperial debt. CRC paid the ESOP $13,288.87 per share, again reflecting the 20% minority discount even though this purchase gave CRC a majority interest in FMC. Two days later, FMC paid a $2900 per share dividend, declared prior to the CRC/ESOP transaction, that provided CRC approximately $300,000 in cash on the shares it had just purchased at a discount. Again, fiduciaries responsible for any price or dividend manipulation are subject to § 1104 liability.

● After CRC assumed the Imperial debt, the ESOP continued to make the $21,014 monthly payments to Central Federal until January 1985. The district court found that the ESOP received no consideration for paying some $230,000 of CRC's debt. Responsible fiduciaries are liable for such waste of the ESOP's assets.

*The Duty To Challenge Other Transactions.*

● On January 1, 1981, FMC held an option to purchase 41.72 of its shares from Richard Nelson for $30,000. FMC's principal stockholders, Nick and the Thielkings, personally exercised the option and purchased shares with a value, at that time, of nearly $1,000,000. The Secretary argues that A.P.W. and Paul breached their ERISA fiduciary duties by misappropriating this corporate opportunity because the ESOP's ownership interest would have increased had FMC purchased the shares at this bargain price. However, FMC's transfer of the Nelson option to its controlling stockholders was a corporate transaction that did not involve investing the ESOP's assets or administering the plan. Therefore, this transfer and the subsequent exercise of the option were not transactions subject to their ERISA duties under *Hickman*.

However, the Secretary further argues that Nick and the Thielkings breached corporate law duties to FMC's minority stockholders, including the ESOP, in misappropriating the Nelson option; that the ESOP's fiduciaries had a duty to challenge that breach through a derivative stockholders' action; and therefore the Secretary may sue the ESOP fiduciaries for failing to do so. As the Secretary notes, the Fifth Circuit has recognized that an ESOP may pursue minority stockholder claims. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Ent., Inc.*, 793 F.2d 1456, 1468–69 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987).

The decision not to have the ESOP assert such a claim is one of plan administration. Thus, under *Hickman*, the Secretary may sue the ERISA fiduciaries for damages under § 1109 for failing to assert the derivative claim. As the court said in *Canale v. Yegen*, 782 F.Supp. at 968 n. 3:

> As plan fiduciaries, defendants may have had an obligation to bring a derivative action if they were aware that the officers and directors of the entities whose stock was held by the ESOP had breached fiduciary duties owed their shareholders; that this would require defendants to bring suit against themselves does not relieve them of their fiduciary duties under ERISA.

To recover under this theory, the Secretary must prove both a breach of the ESOP fiduciaries' duties, *and* that the derivative suit against the corporate insiders would have prevailed. Since its opinion did not address this issue, on remand the district court must determine whether the Secretary proved such a claim against A.P.W. and Paul Thielking.

After CRC became the controlling stockholder of FMC, defendants caused FMC to engage in a number of transactions seemingly for the sole or primary benefit of CRC:

● On April 2, 1982, CRC borrowed $3.2 million from Brenton Bank, pledging all of FMC's assets as security. The loan proceeds funded other CRC projects or loans

to CRC principals. No ESOP stock was pledged, nor were ESOP assets otherwise involved in the projects or loans.

● FMC advanced approximately $930,000 to CRC between November 2, 1982 and January 10, 1985, recording the advances as receivables. An audit revealed no evidence that CRC had repaid or was obliged to repay these advances. Again, none of these advances involved ESOP stock or assets.

● In October 1984, a CRC affiliate purchased real estate from FMC for $266,000 and that same day contracted to sell it to a third party for $598,000. Though that sale fell through, CRC eventually sold the land for $375,000 in August 1986.

These transactions sapped FMC's financial strength and certainly raise doubts about whether defendants fulfilled their corporate law duties to FMC's stockholders. Under *Hickman*, the transactions themselves were not subject to the fiduciary duty strictures of ERISA. However, like the Nelson option, the apparently fraudulent nature of these transactions from the perspective of FMC's stockholders raises the question whether the ESOP's fiduciaries should have commenced derivative actions challenging this misuse of FMC's assets:

> [T]he basis for this ERISA action is not the perpetration of the fraud on [FMC's] shareholders itself, but the fact that, knowing the Plan's investment had been impaired by their own fraudulent acts, defendants, acting as fiduciaries, failed to take any steps to protect the Plan's assets from dissipation.

*Canale v. Yegen*, 782 F.Supp. at 968. Because the record on appeal does not reveal whether these issues were properly raised and tried, we leave them open for the district court on remand.

*Transaction Not Subject to ERISA.*

■ ● When Nick Feilen, A.P.W., and Paul Thielking purchased Harvey Feilen's FMC shares in 1977, Nick borrowed his purchase money from FMC and repaid the loan with his subsequent FMC dividends. A.P.W. and Paul borrowed from Brenton Bank, but FMC repaid the loan, and the Thielkings repaid FMC with their subsequent dividends. Henss structured the transaction.

The district court held that appellees breached their ERISA fiduciary duties by structuring and benefitting from a transaction that adversely affected FMC's cash flow. We disagree. The ESOP did not participate directly in this transaction—it did not buy or sell shares,[7] it did not lend money to the purchasers, and it received its aliquot share of the subsequent dividends. Under *Hickman*, defendants' fiduciary duties were not implicated by their corporate actions in acquiring control of FMC and causing it to declare dividends even if those actions indirectly injured the ESOP by adversely affecting FMC's long-term financial health.

### V. Who Were the Responsible Fiduciaries

Nick Feilen and, after May 22, 1982, A.P.W. Thielking were named trustees of the ESOP. As such, they were ERISA fiduciaries because they "jointly and severally [had] authority to control and manage the operation and administration of the plan," § 1102(a)(1). The statute also provides that any other person is a fiduciary:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

§ 1002(21)(A).

■ The district court found that each defendant except CRC was a § 1002(21)(A) fiduciary—A.P.W. and Paul Thielking be-

---

7. Thus, this case is distinguishable from *Eaves v. Penn*, 587 F.2d 453 (10th Cir.1978), where defendant violated § 1104 by converting a prof-it-sharing plan into an ESOP and then using the ESOP's assets to finance his acquisition of control of the company.

cause as FMC directors they could appoint and remove the ESOP's trustees; Henss and Stephen Thielking because they exercised control in managing ESOP assets and provided investment advice to the ESOP; OHT as the alter ego of Henss; and the other defendants as alter ego corporations. From this general finding, the court held each fiduciary liable for all defendants' breaches of duty. However, one who is an ERISA fiduciary only by reason of § 1002(21)(A) is liable only "to the extent" he exercises discretionary control, renders investment advice, or has discretionary administration responsibility. *See Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 569 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992); *Leigh v. Engle*, 727 F.2d 113, 133–135 (7th Cir.1984); 29 C.F.R. § 2509.75–8. Therefore, we must examine whether each defendant was responsible as a fiduciary for each of the Transactions Subject to ERISA.

■ Henss and Stephen argue that they were not ERISA fiduciaries as a matter of law because they performed only ministerial accounting functions with respect to the ESOP. They rely upon *Anoka Orthopaedic Assoc., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir.1990), where we held that an outside attorney and a benefits consultant were not fiduciaries when providing the professional services for which they were hired.[8]

*Anoka* and similar cases only apply when a professional serves the plan in his or her professional capacity. Henss and Stephen provided the ESOP with far more than professional accounting services. As the district court found, they recommended transactions, structured deals, and provided investment advice to such an extent that they exercised effective control over the

ESOP's assets, since none of the other corporate insiders had the expertise in accounting and employee benefits law needed to spin the tangled web of transactions at issue. In addition, both were corporate insiders—stockholders in FMC and CRC and partners in Imperial—and they used their positions of trust and confidence to involve the ESOP in transactions in which they had a personal interest. In these circumstances, we agree with the district court that Henss and Thielking must be held responsible for any breaches of fiduciary duty that occurred in connection with the Transactions Subject to ERISA. *Compare Monson v. Century Mfg. Co.*, 739 F.2d 1293, 1303 (8th Cir.1984).

■ However, this analysis will not suffice for OHT. Though Henss was no doubt the dominant partner, this was a firm of outside accountants, not a true alter ego. Accountants who render professional services are not ERISA fiduciaries unless they "transcend the normal role" and exercise discretionary authority. *Pappas*, 923 F.2d at 538. Moreover, the district court found that the professional accounting services were properly provided; the breaches of duty stemmed instead from the abuse by Henss and Stephen of their dual roles as corporate insiders. Therefore, on remand, the district court should make specific findings as to whether OHT was a fiduciary responsible for transactions tainted by breach of duty.

■ Paul Thielking argues that the district court erred in imposing fiduciary duties solely by reason of Paul's and A.P.W.'s status as FMC directors. A director's power to appoint plan trustees makes him a fiduciary, but only "to the extent" he exercises the discretion or control described in § 1002(21)(A). Depending

---

**8.** Other cases holding that professionals providing services to employee benefit plans were not fiduciaries include *Consolidated Beef Ind., Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 964–65 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992) (insurance company and its salesman who sold annuities to plan); *Associates in Adolescent Psychiatry*, 941 F.2d at 568–70 (financial consulting firms); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th

Cir.1991) (claims processing company); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535–37 (7th Cir.1991) (actuaries); *Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 292–94 (7th Cir.1989); *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1149–51 (3d Cir.1989) (independent auditors); *Yeseta v. Baima*, 837 F.2d 380, 386 (9th Cir.1988) (attorney).

upon the circumstances, the director's duty to monitor the actions of appointed trustees may impose a duty to prevent wrongful conduct. *See Leigh v. Engle,* 727 F.2d at 133–135; 29 C.F.R. § 2509.75–8. Thus, on remand, the district court should make specific findings as to whether the directors' fiduciary duty was breached with respect to each Transaction Subject to ERISA.

In addition, if the district court determines on remand that any ERISA fiduciary duty was breached by the failure to challenge one or more of the transactions described in The Duty To Challenge Other Transactions section of this opinion, the court will need to determine whether any of the defendants were fiduciaries responsible along with the named trustees for that conduct.

■ We agree with the district court that the personal corporations of Henss and Thielking were responsible fiduciaries whenever these individuals were. However, Lakewood Marine Ltd. and Paul W. Thielking, O.D., P.C., were merely corporations that purchased and passively held FMC stock for A.P.W. and Paul Thielking. The leveraged buy-out transaction was not subject to ERISA, and a passive minority stockholder is not, without more, a fiduciary. Thus, we see no basis for holding these corporations liable for any breach of duty, though the district court is free to revisit this question on remand.

IV.   Were Fiduciary Duties Breached

Section 1104(a)(1) imposes three overlapping duties: the ERISA fiduciary must act "solely in the interest of the participants and beneficiaries" of the plan, "for the exclusive purpose" of providing benefits to them, and "with the care, skill, prudence, and diligence" of a "prudent man acting in a like capacity and familiar with such matters." The district court concluded that appellees breached these fiduciary duties "when they engaged in transactions affecting the ESOP that involved self-dealing and conflicts of interest."

■ We disagree that self-dealing and conflicts of interest are per se unlawful conduct by an ESOP fiduciary. Congress has expressly authorized an ESOP to enter into transactions in the employer's stock and with interested parties, including the fiduciary. *See* pp. 664–65, *supra.* These are prohibited transactions for other ERISA plan fiduciaries precisely because of the inherent risk of "self-dealing" and "conflicts of interest." Moreover, Congress intended an ESOP to be a "technique of corporate finance." That intent must be recognized in applying the "exclusive purpose" test of § 404(a)(1)—ESOP fiduciaries should not be subject to breach-of-duty liability for investing plan assets in the manner and for the multiple purposes that Congress intended.

■ These tensions do not leave us hopelessly adrift, for trust law has developed standards of duty applicable to fiduciaries with dual loyalties. In addition to the obligation to act in the best interests of the trust, "When a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions." *Schaefer v. Arkansas Medical Soc'y,* 853 F.2d 1487, 1492 (8th Cir.1988), citing *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Thus, the ESOP fiduciary is not prohibited from being on both sides of a transaction involving the ESOP's assets, but he must serve both masters (or at least the ESOP) with the utmost care and fairness.

Some cases suggest that an ERISA fiduciary facing a conflict of interest situation must resign one of his dual roles to avoid liability under § 1104. *See Sommers Drug Stores,* 793 F.2d at 1469. However, a strict rule to this effect would conflict with the congressional intent to allow the employer and its insiders to serve as ESOP fiduciaries, even when dealing in the employer's stock. Nevertheless, this case graphically illustrates the risk of liability that ESOP fiduciaries bear when they act with dual loyalties without obtaining the impartial guidance of a disinterested outside advisor to the plan. Because the potential for disloyal self-dealing and the risk to the benefi-

ciaries from undiversified investing are inherently great when insiders act for a closely held corporation's ESOP, courts should look closely at whether the fiduciaries investigated alternative actions and relied on outside advisors before implementing a challenged transaction. *See Donovan v. Cunningham,* 716 F.2d at 1467–68, 1474; *Newton v. Van Otterloo,* 756 F.Supp. 1121, 1128–29 (N.D.Ind.1991).

■ Although the district court's legal standard was too broad, we affirm its determination that the fiduciaries responsible for the above-described Transactions Subject to ERISA violated § 1104. The ESOP paid too much for FMC stock purchased, sold FMC stock for less than its price in contemporaneous transactions, sold stock on the eve of large dividends, and paid CRC obligations without consideration. The record demonstrates that the responsible fiduciaries were guilty of reprehensible self-dealing, not the kind of divided but honest loyalty that Congress intended. Such conduct plainly violated ERISA fiduciary duties.

### VI. Questions of Remedy

Section 1109(a) provides that an ERISA fiduciary who breaches any duty is liable to the plan (i) for "any losses to the plan resulting from each such breach," (ii) for "any profits ... made through use of assets of the plan by the fiduciary," and (iii) for "such other equitable or remedial relief as the court may deem appropriate." *See also* House Conf.Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5100. In this case, all parties appeal the district court's remedy.

*Damages.*

■ In a post-trial memorandum, the Secretary urged the district court to award damages against each defendant in the amount of $4,065,727, the ESOP's total investment in its now-worthless FMC stock plus imputed earnings on that investment. The district court awarded no damages, finding that the Secretary failed to prove that defendants' breaches of duty proxi-

mately caused any monetary loss to the ESOP.

Without reaching the question of causation, we reject the Secretary's damage analysis because it is based upon an overly-expansive view of defendants' fiduciary duties under *Hickman.* However, while defendants are not liable under ERISA for causing FMC to fail, the Secretary did prove that defendants (or at least some of them) violated § 1104 by causing the ESOP to engage in stock transactions that caused specific injury to the ESOP *at the time in question.* The basic remedy under trust law for such a breach of duty is to "restor[e] plan participants to the position in which they would have occupied but for the breach of trust." *Dasler v. E.F. Hutton & Co.,* 694 F.Supp. 624, 634 (D.Minn.1988). An appropriate measure of damages for manipulating the price of securities is "the difference between what was paid for the stock, and what would have been paid ... had the market price not been manipulated." *Donovan v. Bierwirth,* 754 F.2d 1049, 1055 (2d Cir.1985).

■ Therefore, although the Secretary presented only an unsound global damage theory, we conclude that the district court's decision to award no damages overlooked its function "to fashion the remedy best suited to the harm." *Garnatz v. Stifel, Nicolaus & Co.,* 559 F.2d 1357, 1360 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978). *Compare Leigh v. Engle,* 858 F.2d 361, 366–67 (7th Cir.1988). In addition, we agree with the Secretary that, once the ERISA plaintiff has proved a breach of fiduciary duty and a prima facie case of loss to the plan or ill-gotten profit to the fiduciary, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by, or his profit was not attributable to, the breach of duty. *See* Bogert, The Law of Trusts and Trustees § 871 (2d revised ed. 1982 & Supp.1991); *Leigh v. Engle,* 727 F.2d at 138–39; *Kim v. Fujikawa,* 871 F.2d 1427, 1430–31 (9th Cir.1989); *Donovan v. Bierwirth,* 754 F.2d at 1056; *Marshall v. Snyder,* 572 F.2d 894, 900 (2d Cir.1978); *Schoenholtz v. Doniger,* 657 F.Supp. 899,

907 (S.D.N.Y.1987). As Judge Friendly commented, "Courts do not take kindly to arguments by fiduciaries who have breached their obligations that, if they had not done this, everything would have been the same." *In re Beck Ind., Inc.,* 605 F.2d 624, 636 (2d Cir.1979).

Therefore, on remand the district court must determine the specific damages that resulted from each of the transactions in which ERISA fiduciary duties were breached. Under § 1109(a), damages can result from a financial loss to the plan, such as paying CRC's debt to Central Federal for no consideration; from a profit wrongfully made, such as a fiduciary purchasing FMC stock from the ESOP just before a large cash dividend was paid, without reflecting the dividend in the purchase price; or from a combination of the two, which may result from the manipulation of stock prices.[9] Of course, the measure of such damages need not be exact—"it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).

*Injunctive relief.*

■ The district court permanently enjoined appellees "from serving directly or indirectly as fiduciaries of any ESOP or ESOT, or any other employee benefit plan covered by ERISA" and "from engaging in any acts that would violate fiduciary duties imposed by ERISA." The district court properly entered a permanent injunction against Henss and Stephen Thielking because they had repeatedly used their fiduciary control over the ESOP's assets to profit from self dealing. "ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction." *Beck v. Levering,* 947 F.2d 639, 641 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992).

The Secretary argues that the district court erred in refusing to enjoin Henss and Stephen from providing services to any ERISA plan. This is not a minor issue. Accountants frequently provide professional services to ERISA plans in a non-fiduciary capacity, services that would be barred by the injunction the Secretary seeks. Henss testified that he holds himself out to the public as an ERISA expert and has set up and served over two hundred ESOPs. In other words, the Secretary seeks effectively to put these outside accountants out of business.

The Secretary cites a number of prior cases in which defendants who breached ERISA fiduciary duties were permanently enjoined from acting as service providers. *See Beck,* 947 F.2d at 640; *Whitfield v. Tomasso,* 682 F.Supp. 1287, 1306 (E.D.N.Y. 1988); *Brock v. Lindemann,* No. CA3–84–1814–R (N.D.Tex. Jan. 29, 1987); *Brock v. Crapanzano,* CA No. 84–1899, 1986 WL 15752 (S.D.Fla. Jul. 23, 1986). These cases either did not involve professional service providers, or they involved service providers whose services were found to be less than professional.

■ In this case, Stephen Thielking competently rendered the professional services that would be considered ministerial under *Anoka.* The ESOP was properly structured, the ESOP's books and records were properly maintained, and, most significantly, the accountants' valuations of FMC stock were found to be fair and reasonable. Stephen violated ERISA when he crossed the line from service provider to fiduciary in control of investment decisions, and then allowed his personal stake in the ventures to corrupt his decisions. In these circumstances, we conclude that the district court did not abuse its discretion in limiting the permanent injunction against Stephen to the misconduct proved. As our decision in this case should make clear, the injunction against serving as an ERISA fiduciary and

---

**9.** The district court found that the OHT accountants used appropriate valuation techniques and fairly calculated the fair market value of FMC stock on the dates in question. However, these findings do not rebut the claim that appellees improperly caused loss to the ESOP or profit for themselves by manipulating the 20% minority discount.

violating ERISA fiduciary duties are broad prohibitions that, if obeyed, will ensure that Stephen complies with the statute.

■■■ We reach a different conclusion with regard to Henss, however. Henss was the dominant decision-maker for FMC and the ESOP with respect to all or nearly all the transactions discussed in this opinion. He also holds himself out as an ERISA expert who has structured and provided other services and advice to hundreds of ESOPs. In addition to engaging in the actionable self-dealing we have described, Henss's trial testimony displayed an appalling insensitivity to the proper role of ESOPs and ESOP fiduciaries. For example, Henss stated repeatedly his view that ESOP fiduciaries are exempt from ERISA's "prudent man" rule when investing plan assets in an employer's stock or property.

It is true, as we have recognized throughout this opinion, that Congress intended ESOPs to play a unique role in financing corporate activity. But ESOP fiduciaries accept a concurrent responsibility to act prudently on behalf of the plan's beneficiaries. For Henss to believe otherwise, and to engage in the transactions here at issue, demonstrate such a fundamental misunderstanding of the ERISA statute, regulations, and case law as to require that he have no further opportunity to subvert this important federal law. Therefore, although we are most reluctant to impose such a stringent limitation on a person's livelihood, we agree with the Secretary that the district court abused its discretion in not further enjoining Henss from acting as a service provider to ERISA plans.

## VII. Conclusion

To summarize, we affirm the district court's judgment that Henss and Stephen Thielking, and their personal corporations, breached their ERISA fiduciary duties in causing the ESOP to engage in the above-described Transactions Subject to ERISA, and we affirm the district court's permanent injunction against Stephen Thielking and Stephen K. Thielking, C.P.A., P.C. We modify the permanent injunction against John Henss and John L. Henss C.P.A., P.C., to further enjoin them from acting as a service provider to any ERISA plan. We reverse the district court's finding that the Transaction Not Subject to ERISA was subject to ERISA fiduciary duties. We remand to the district court for further consideration of whether OHT, A.P.W. and Paul Thielking, and the other corporate defendants were fiduciaries who breached fiduciary duties with respect to the Transactions Subject to ERISA; whether any of the defendants breached fiduciary duties by not causing the ESOP to challenge one or more or the Other Transactions described in the Duty To Challenge section of this opinion; and the damages, if any, recoverable on behalf of the ESOP with respect to each breach of fiduciary duty. We leave to the district court's discretion whether these additional inquiries require a new trial or a reopening of the evidentiary record.