# United States Court of Appeals
## For the First Circuit

No. 16-1048

PPUC PENNSYLVANIA PUBLIC UTILITY COMMISSION; QUALITY SPEAKS,
LLC; AMERICAN REGISTRY FOR INTERNET NUMBERS, LTD.; GLOBAL NAPS,
INC.,

Plaintiffs,

CARL F. JENKINS,

Receiver, Appellee,

v.

FRANK T. GANGI,

Defendant, Appellant,

VERIZON NEW ENGLAND, INC., d/b/a Verizon Massachusetts;
MASSACHUSETTS DEPARTMENT OF TELECOMMUNICATIONS & ENERGY; PAUL B.
VASINGTON, in his capacity as Commissioner; JAMES CONNELLY, in
his capacity as Commissioner; W. ROBERT KEATING, in his capacity
as Commissioner; DEIRDRE K. MANNING, in her capacity as
Commissioner; EUGENE J. SULLIVAN, JR., in his capacity as
Commissioner; FERROUS MINER HOLDINGS, LTD.; GLOBAL NAPS
NETWORKS, INC.; GLOBAL NAPS NEW HAMPSHIRE, INC.; GLOBAL NAPS
REALTY, INC.; 1120 HANCOCK STREET, INC.; CHESAPEAKE INVESTMENT
SERVICES, INC.; REYNWOOD COMMUNICATIONS, INC.

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Torruella, Lynch, Kayatta,
Circuit Judges.

---

Donald H.C. Libbey, with whom Donald H.C. Libbey PC, Steven J. Marullo, and Law Office of Steven J. Marullo were on brief for appellee.

Eric Charles Osterberg, with whom Osterberg LLC, Andrew Good, and Good Schneider Cormier & Fried were on brief for appellant.

---

October 17, 2017

---

**LYNCH**, **Circuit Judge**.  Frank Gangi ("Gangi") appeals from the district court's December 30, 2015 order approving a sale of his assets and the assets of entities owned by him, recommended by the receiver, Carl Jenkins ("Jenkins"), whom the court appointed to sell those assets for the benefit of Gangi's creditors.  Gangi, on appeal, primarily argues that the assets were sold to a fiduciary of the receivership estate, and the sale was prohibited as a result.  In the alternative, Gangi argues that the sale was improper and unfair.

Jenkins counters that this appeal should not be heard on the merits because it is equitably moot, and that, in any event, the assets were not sold to a fiduciary and the sale was appropriate.  The district court rejected Gangi's contentions as without merit; agreed with the receiver's contentions; and concluded that the sale was fair, reasonable, and in the best interest of the receivership.  The court also described the different categories of assets and found that the allocations as to purchase price were fair and reasonable.  We hold this appeal is not equitably moot, and affirm the sale order because there was no abuse of discretion.

## I. Background

The litigation that has resulted in the receivership and this apparently final order of sale is in its fifteenth year.  It began in 2002, when Global Naps, Inc. ("GNAPs") sued Verizon New

England, Inc. ("Verizon"). See Global Naps, Inc. v. Verizon New Eng., Inc., 603 F.3d 71, 79 (1st Cir. 2010). Verizon counterclaimed, and won a $58 million judgment. Id. at 79-80. We bypass here a description of the business relationships, which are amply described in that opinion and other opinions. On remand, the district court found that Gangi, the owner of GNAPs, was jointly and severally liable for the $58 million judgment because GNAPs was merely an alter ego for Gangi. Id. at 81.

In 2010, the district court placed the assets of many entities owned by Gangi into receivership and appointed Jenkins receiver. The district court empowered Jenkins to "take any actions to identify, safeguard and preserve the assets of the Judgment Debtors, to make all business decisions over the assets and operations of Judgment Debtors, and to implement, satisfy and enforce" the receivership order. Over the years, the receiver did just that. The district court judge here had approved prior sales of assets by the receiver and had extensive experience with this case at the time this sale occurred.

Pursuant to these duties, on March 28, 2013, Jenkins entered into an exclusive agreement with Hilco IP Services LLC ("Hilco") to market internet protocol addresses ("IP addresses") owned by the estate.[1] Hilco's marketing agreement did not extend

---

[1] "An Internet Protocol address, or 'IP address,' is a unique number corresponding to a particular computer accessing the

- 4 -

to any other receivership assets.  Between the engagement of Hilco and the sale at issue, Jenkins accepted only two offers to purchase blocks of IP addresses.  Both sales were through Hilco.  In one of these sales, Jenkins sold 65,536 IP addresses to Mid-Continent Communications for $376,832.

On March 10, 2015, the district court made it clear that the receivership should be brought to an end through prompt disposition of the remaining assets.  In an order, it stated: "In the spirit of bringing this case to an end, the receiver shall file a status report within 30 days of this order giving a preliminary accounting . . . .  In that report, the receiver shall also propose a timeline for filing his final accounting."

On December 3, 2015, Jenkins filed a motion requesting an order approving a sale of the remaining receivership assets to Northeast Technology Solutions, LLC ("Northeast") for $525,000. The property included, "five (5) lots of vacant land located in Las Vegas, NV"; "several domain names registered to GNAPs entities"; "telephone number blocks"; and four blocks of IP addresses, for a total of 114,688 addresses.  For reasons having to do with the resolution of other litigation, the price had to be allocated to its different components.  The receiver, by agreement

---

internet." Doe v. Gonzales, 500 F. Supp. 2d 379, 387 n.8 (S.D.N.Y. 2007).  The estate included the registration rights to thousands of IP addresses.

of the parties to the sale, allocated $50,000 of the purchase price to the real property in Las Vegas, $275,000 to a block of 65,536 IP addresses, and $200,000 collectively to the remaining IP addresses, domain names, and telephone numbers.

A footnote to Jenkins's motion for an order approving the sale stated: "Northeast has a relationship with HilcoGlobal, and any fee otherwise due to HilcoGlobal under any agreement with the Receiver has been waived." The receiver also posted the motion and information about the sale on his website.

Gangi filed an opposition to the sale order, making arguments that the price was too low and the sale was prohibited because "Hilco acted as the exclusive marketing agent with respect to the very assets at issue." But he did not contest the accuracy of the receiver's representations. Jenkins filed an extensive point-by-point reply justifying the sale price as to each of the categories of assets sold. He elaborated on the relationship between Northeast and Hilco, stating, "Northeast's relationship with Hilco is one of an associated entity that purchases various assets for later marketing and sale by Hilco."

The district court entered an order approving the sale on December 30, 2015. The court found that the sale of the estate's remaining assets would "allow for the orderly wind-up of the Receivership" and that "[t]he wind-up and completion of the Receivership as soon as possible is in the best interest of all

- 6 -

parties involved in the Receivership."  The order found that the sale was "in the best interest of the Receivership."  It rejected Gangi's objections, finding them to have no merit on the record before it, and found that the terms and conditions of the asset purchase agreement, including the sale price, were "fair and reasonable under the circumstances."  Gangi appealed.

## II. **Equitable Mootness**

Despite Jenkins's arguments, we believe the appeal is not equitably moot.  Equitable mootness is "rooted in the 'court's discretion in matters of remedy and judicial administration' not to determine a case on its merits."  In re Pub. Serv. Co. of N.H., 963 F.2d 469, 471 (1st Cir. 1992) (quoting In re AOV Indus., Inc., 792 F.2d 1140, 1147 (D.C. Cir. 1986)).  We have said that equitable mootness is appropriate where, in the absence of a stay, a sale has progressed so far that relief would be impracticable.  Id. at 473.

Jenkins argues the appeal is equitably moot because the sale would be difficult to unwind.  In In re Public Service Co. of New Hampshire, the court looked to the following three factors to determine whether an appeal was equitably moot: (1) whether the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order," id. at 473 (citation omitted); (2) whether the challenged plan proceeded "to a point well beyond any practicable appellate annulment," id. at

473-74; and (3) whether providing relief would harm innocent third parties, id. at 475.

Gangi failed to appeal the denial of a stay, so the diligence factor weighs against him in the analysis. The other two factors weigh strongly against Jenkins. Jenkins shows that the sale was complex, required regulatory approval, involved disparate assets, and took months to close. These challenges do not mean that the sale has moved beyond practicable annulment. Jenkins does not state that Northeast no longer has the assets in question. Jenkins also fails to show that relief would result in any harm to innocent third parties.

Jenkins relies heavily on In re Stadium Management Corp., 895 F.2d 845 (1st Cir. 1990), to argue that an appeal is moot where a bulk sale of assets has been completed. That case pertains only to statutory mootness under 11 U.S.C. § 363(m), which does not apply here.

### III. Approval of Sale

We review the order approving the sale for an abuse of discretion. Fleet Nat'l Bank v. H&D Entm't, Inc., 96 F.3d 532, 540 (1st Cir. 1996) (citation omitted). Any subsidiary findings of fact are reviewed for clear error, and holdings of law are reviewed de novo. Id. There was no abuse of discretion, and Gangi's arguments to the contrary are without merit.

## A.    The Fiduciary Argument

It is true that "a full-fledged fiduciary, such as a trustee or court-appointed receiver . . . may not normally sell estate property to himself even if the terms are fair." Id. But Gangi presented no evidence that Hilco, a mere sales agent, was a fiduciary, or that Northeast, through Hilco, was a fiduciary, and there is no reason to think they were. The district court implicitly rejected Gangi's argument that Hilco was a fiduciary, and it was correct to do so.

Hilco, contrary to Gangi's argument, is not a "full-fledged fiduciary," and so is not subject to automatic disqualification from purchasing receivership assets. "The central reason for disqualifying the fiduciary as a buyer is that there is no one else who can similarly protect the estate's interest." Id. at 541. Here, it was Jenkins who had control over the receivership assets and protected the estate's interests.

A blanket prohibition applies to fiduciaries because, "the main assurance that the estate will be maximized is the zeal of the seller to secure the best price, and that zeal is likely to be tempered if the seller is selling to himself." Id. at 540. Jenkins is the seller here, not Hilco. Hilco's relationship did not create a risk that Jenkins's "zeal . . . to secure the best price" would be "tempered." Id. To the extent Gangi asserts that Jenkins is self-dealing by selling to his own agent, that argument

- 9 -

goes nowhere on these facts.  There is no evidence that Jenkins, the receiver, had a stake in the transaction.

Gangi attempts to rely on Martin v. Feilen, 965 F.2d 660 (8th Cir. 1992), but that case is factually distinguishable.  The court there found that accountants were fiduciaries to a retirement plan where "they recommended transactions, structured deals, and provided investment advice to such an extent that they exercised effective control over the [plan's] assets."  Id. at 669 (emphasis added).  Hilco did not have effective control over the estate's IP addresses; it was merely responsible for marketing them.  Gangi argues that Hilco negotiated deals with potential buyers and "secured the offer for at least one of the prior sales."  That is what Hilco had been hired to do -- find buyers for the property.

In Fleet National Bank, we highlighted the dangers of extending the "circle of automatic disqualification" too far.  96 F.3d at 541.  Disqualification of too many buyers risks harming the estate by disqualifying a would-be highest bidder.  Id.  This danger is especially pronounced where, as here, "the universe of serious buyers is likely to be small."  Id.  Finding buyers for the IP addresses was difficult, and Jenkins had only accepted two offers over almost two years.

B.   Propriety of Selling to Northeast

"[J]udgments as to disqualification of a non-fiduciary purchaser should be made on a case by case basis, taking account

- 10 -

of all of the surrounding circumstances." Id. at 540. The district court has "wide discretion in judging whether a receiver's sale is fair in terms and result and serves the best interests of the estate." Id. The district court took the circumstances of the sale into account, including Hilco's relationship with Northeast (disclosed by the receiver), the purchase price for each of the assets, and the importance of quickly winding up the receivership.

Gangi is incorrect that this sale was improper under Fleet National Bank; that case undercuts his argument. A receiver there sold a radio station to an accounting firm that had performed accounting services related to those radio stations.[2] Id. at 535-36. The accounting firm had been "merely hired by the fiduciary to perform a discrete and narrow function unrelated to the sale," and the sale was approved. Id. at 541. Under Fleet National Bank's fact-specific analysis, the sale here was appropriate given the difficulty finding other buyers, the need to quickly wind-up the receivership, Gangi's obstinacy, and the lack of evidence that Hilco abused its position as marketing agent.

---

[2] Gangi claims the accounting firm in Fleet National Bank was "uninvolved with the assets to be sold," but this is incorrect. The accounting firm provided accounting services related to the radio stations, but the services they provided were unrelated to the sale of the radio stations. Id. at 535.

As the district court held, "[t]he wind-up and completion of the Receivership as soon as possible is in the best interest of all parties involved in the receivership." The receivership began in 2010 and both this Court and the district court have made findings that Gangi has obstructed it throughout. This Court found the receivership has been, "hampered by Gangi, who, among other stratagems seemingly designed to conceal or protect his assets, apparently had transferred ownership of his $400,000 Porsche to a ten-year-old child." Global Naps, Inc. v. Verizon New Eng., Inc., 706 F.3d 8, 11 (1st Cir. 2013). The district court noted, in response to Verizon's request for sanctions, that Gangi's behavior throughout this litigation had been troubling and may warrant sanctions. The district court chose not to pursue sanctions because, "[t]he interests of justice strongly favor resolution, not additional litigation about sanctions." This transaction liquidated the last of the receivership assets, allowing Jenkins to provide a final accounting.

C. Fairness of the Sale

Gangi argues we should unwind the sale, asserting Jenkins did not produce evidence indicating the sale price was fair, but Gangi provided no reliable evidence and did not contest the receiver's factual representations. The only evidence Gangi provided on whether the sale of real property was undervalued was

- 12 -

an out-of-date assessment from 2000, when the parcels of land in Las Vegas were more valuable than they were in 2015. Jenkins, in fact, provided a more current assessment of the value of the property, showing that Gangi's evidence was outdated. The real estate market in that location had collapsed, as the receiver noted. As to the IP addresses, Gangi gestured toward the higher per-address price in the prior sale to Mid-Continent in August of 2015, but that does not indicate the sale price to Northeast was unreasonably low under the circumstances. Gangi did not provide any evidence related to the value of the phone numbers or domain names.

The district court did have information relevant to the sale. It knew the price the receiver had previously attained for IP addresses, the length of the receivership, and the importance of completing the receivership. In addition, the district court was familiar with Jenkins. Jenkins had been receiver for five years when this sale was approved, and the district court had already approved several sales Jenkins had arranged. Gangi appears to have been the only party who believed sale property was undervalued. The creditors to whom the sale proceeds would eventually go offered no objection that the amount realized was too low.

In the absence of reliable evidence indicating that the sale was unfair, the district court relied on the business judgment

of the receiver who had worked with it for five years, over Gangi's unsupported objections. This was not an abuse of discretion, particularly given Gangi's truculence and dishonesty throughout these proceedings.[3]

Gangi argues Jenkins was required to prove that the sale was fair because the fiduciary bears the burden of proving the fairness of a sale. In re Access Cardiosys., Inc., 404 B.R. 593, 691 (Bankr. D. Mass. 2009). The burden in that case only applies if a fiduciary is selling to himself. This burden does not apply here because Jenkins did not sell to himself and Hilco was not a fiduciary, nor was Northeast.

D.    Required Disclosure and Good Faith

The district court has an obligation to "carefully monitor the sale process and assure that there is full disclosure and good faith." Fleet Nat'l Bank v. H & D Entm't, Inc., 926 F. Supp. 226, 245 (D. Mass. 1996).[4] The court did so here. The relationship between Hilco and Northeast was sufficiently

---

[3]    Gangi argues the sale order was improper because the district court failed to make specific factual findings. He does not cite any relevant case law or, in the absence of case law support, develop an analysis indicating such findings were required, so his argument is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). He relies on Thermo Electron Corp. v. Schiavone Constr. Co., 915 F.2d 770 (1st Cir. 1990), which concerns Fed. R. Civ. P. 52(a) and is inapplicable.

[4]    Gangi also perfunctorily argued that there should have been a hearing prior to the sale order. This argument was not developed, so it is waived. Zannino, 895 F.2d at 17.

- 14 -

disclosed by the receiver before the court approved the sale. Jenkins made it clear that Northeast was an affiliate of Hilco, and explained Northeast's purpose.

The details of the sale were disclosed. Gangi has not cited any case law indicating that the district court was required to elicit more evidence from the parties about the prudence of the sale before approving it.

We affirm. Costs are awarded to Jenkins.