**BENEFITS COMMITTEE OF SAINT-GOBAIN CORP., et al., Plaintiffs,**

**v.**

**KEY TRUST COMPANY OF OHIO, N.A., Trustee of the Furon Company Employee Stock Ownership Plan, Defendant.**

No. 1:00–CV–751.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 5, 2001.

Steven S. Kaufman, Thomas L. Feher, Kathleen M. Minagan, Kaufman & Cumberland, Cleveland, OH, Michael L. Banks, Kay Kyungsun Yu, Brian J. Dougherty, Morgan, Lewis & Bockius, Philadelphia, PA, for plaintiffs.

John Wesley Edwards, II, Jones, Day, Reavis & Pogue, Cleveland, OH, for defendant.

### *Memorandum of Opinion and Order*

GAUGHAN, District Judge.

### *INTRODUCTION*

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment (Doc. 16) and Defendant's and Counterclaim Plaintiff's Motion for Summary Judgment (Doc. 17). Plaintiffs bring this action pursuant to the Employee Retire-ment Income Security Act of 1974, as amended (hereafter "ERISA"), 29 U.S.C. § 1132(a)(3).[1] This case arises out of defendant's refusal to use certain proceeds held in an employee stock ownership plan to repay loans made to the plan from the plan sponsor. Plaintiffs allege that defendant's refusal constitutes a breach of the employee stock ownership plan and defendant's fiduciary duties. For the following reasons, plaintiffs' Motion is DENIED and defendant's Motion is GRANTED.

### *FACTS*

Plaintiffs are the Benefits Committee of Saint–Gobain Corp. and the four members of that committee. (Stip.¶ 1).[2] Plaintiffs are the plan administrator, as that term is defined in ERISA, of the Furon Company Employee Stock Ownership Plan (hereafter "Furon ESOP"). (Stip.¶ 4). Defendant is a federally chartered bank which has its principal place of business in Cleveland, Ohio, and the trustee of the Furon ESOP. (Stip.¶ 6).

Saint–Gobain Corp. (hereafter "Saint–Gobain") is a Pennsylvania corporation. (Stip.¶ 2). Furon Company (hereafter "Furon") is a California corporation. (Stip.¶ 3). Furon is the plan sponsor of the Furon ESOP. (Stip.¶ 5). As described below, Saint–Gobain acquired Furon in late 1999. (Stip.¶¶ 22–23).

Both plaintiffs and defendant are named fiduciaries of the Furon ESOP. (Stip.¶ 12).

Furon established the Furon ESOP on February 4, 1990. (Stip.¶ 7). The Furon ESOP was intended to qualify as a stock bonus plan under § 401(a) of the Internal Revenue Code of 1986 (hereafter "Code"), as amended, and as an employee stock ownership plan as defined by § 4975(e)(7) of the Code. (Stip.¶ 7). The Furon ESOP was designed to invest primarily in shares

---

**1.** All citations to ERISA will be to the United States Code section.

**2.** The parties have submitted Stipulations of Fact (Doc. 18).

of Furon stock. (Stip.¶ 7). Furon established the Furon ESOP to provide eligible employees with the opportunity to obtain a beneficial interest in the company through the allocation of Furon stock to individual participant accounts. (Stip. Ex. A § 1.1).

Furon and Ameritrust Company National Association entered into the Furon Company Employee Stock Ownership Plan Trust Agreement (hereafter "Trust Agreement") on February 15, 1990. (Stip.¶ 9). The Trust Agreement provides for the establishment of the Furon Company Employee Stock Ownership Plan Trust (hereafter "Trust") to hold the assets of the Furon ESOP, with Ameritrust as the trustee. (Stip.¶ 9). Defendant is the successor to Ameritrust as the trustee of the Furon ESOP.[3] (Stip.¶ 11).

Plaintiffs claim that under the Trust Agreement they have full discretion to construe and interpret the terms of the Furon ESOP. Defendant, on the other hand, is a custodian of the Furon ESOP's assets and holds those assets under the Trust Agreement. (Stip. Ex. B § 5.2). Defendant is responsible for making payments and distributions as provided in the Furon ESOP and the Trust Agreement and at the direction of plaintiffs, to the extent permitted by law. (Stip. Ex. B § 5.2).

In its capacity as trustee of the Furon ESOP, defendant caused the Trust to enter into a series of loan transactions with Furon, whereby Furon loaned money to the Furon ESOP to finance the purchase of Furon stock (hereafter "Exempt Loans"). (Stip.¶ 13). The Exempt Loans were permitted by the terms of the Furon ESOP. (Stip.¶ 13). The Exempt Loans are subject to ERISA and the Code, which generally prohibit loans between employers and the employee benefit plans they

sponsor. (Stip.¶ 14). However, the Exempt loans were structured so as to fall within the exemption set forth in ERISA, 29 U.S.C. § 1108(b)(3), and the Code, 26 U.S.C. § 4975. (Stip.¶ 14). The Exempt Loans were made between October 1, 1990 and August 29, 1997 in the aggregate principal amount of Six Million Two Hundred Forty-one Thousand Ninety-eight Dollars and Eighty-five Cents ($6,241,098.85). (Stip.¶ 16).

The Exempt Loans were designed so that the Trust, acting through defendant, borrowed money from Furon. (Stip.¶ 17). Defendant then used the proceeds from the Exempt Loans to purchase Furon stock, which was placed in a Suspense Subfund that was not allocated to the account of any individual Furon ESOP participant. (Stip.¶ 17). Although it could have done so, defendant did not pledge the Furon stock as security for any of the Exempt Loans. (Pltf. Mot. at 2). Thus, the Exempt Loans are unsecured.

Furon made contributions to the Furon ESOP which were used by defendant, in whole or in part, to make principal and interest payments to Furon on the Exempt Loans. (Stip.¶ 19). As the Exempt Loans were repaid, a portion of the Furon stock in the Suspense Subfund was released based upon a formula set forth in § 6.3 of the Furon ESOP. (Stip.¶ 20). As the Furon stock was released, it was allocated to the individual accounts of the Furon ESOP participants pursuant to §§ 6.1 and 6.4 of the Furon ESOP. (Stip.¶ 21). Thus, when the Furon ESOP was first established, individual participant accounts were empty because all of the Furon stock held by the Trust was in the Suspense Subfund. (Pltf. Memo. at 3). Over time, as Furon made contributions to the Furon ESOP and

---

**3.** Defendant and its predecessors, acting as trustee of the Furon ESOP, will be collectively referred to as "defendant."

those proceeds were used to pay down the Exempt Loans, Furon stock was transferred from the Suspense Subfund and allocated to individual participant accounts. (Pltf. Memo at 3). The individual participant account balances, i.e., the benefits accrued under the Furon ESOP, grew as the Exempt Loans were repaid. (Pltf. Memo at 3).

On October 23, 1999, approximately 95% of Furon's stock was acquired by FCY Acquisition Corp. (hereafter "FCY") in a cash tender offer. (Stip. ¶ 22). FCY is a wholly owned subsidiary of Saint–Gobain. (Stip. ¶ 22). The acquisition included the purchase for cash of all the Furon stock held by the Furon ESOP, including the unallocated stock held in the Suspense Subfund, at a price of Twenty-five Dollars and Fifty Cents ($25.50) per share. (Stip. ¶ 22). The purchase price represented a premium of 56% over the market value of Furon stock, which was Sixteen Dollars and Thirty-one Cents ($16.31) as of September 17, 1999. (Stip. ¶ 22). The cash proceeds from the sale of the Furon stock in the Suspense Subfund was approximately Six Million One Thousand Forty-two Dollars ($6,001,042.00). (Stip. ¶ 25). As of October 22, 1999, the day before the acquisition, the Furon ESOP included 2,220 participants. (Stip. ¶ 34).

On November 21, 1999, the remaining outstanding shares of Furon stock were acquired indirectly by Saint–Gobain through a merger of FCY with Furon. (Stip. ¶ 23). Although the parties do not explicitly say so, Furon was apparently the surviving corporation. As of that date, the Suspense Subfund was comprised solely of cash proceeds from the sale of the Furon stock. (Pltf. Mot. at 2). On November 21, 1999, the principal amount of the Exempt Loans was Two Million Three Hundred Thirty-two Thousand Six Hundred Fifty-three Dollars and Seventy-five Cents ($2,332,653.75), (Stip. ¶ 24).

On December 31, 1999, Saint–Gobain Performance Plastics Corp., a wholly owned subsidiary of Saint–Gobain, was merged into Furon. (Stip. ¶ 26). Although Furon was the entity which survived the merger, Furon simultaneously changed its name to Saint–Gobain Performance Plastics Corp (hereafter "Saint–Gobain Plastics"). (Stip. ¶ 26). Thus, currently, the sponsor of the Furon ESOP and the "company" referred to therein is Saint–Gobain Plastics. (Stip. ¶ 26).

As of March 9, 2000, the amount held in the Suspense Subfund was approximately Six Million One Hundred Fifteen Thousand Five Hundred Fifty-four Dollars ($6,115,554.00). (Stip. ¶ 25).

On March 10, 2000, the board of directors of Saint–Gobain Plastics amended and terminated the Furon ESOP, effective March 17, 2000. (Stip. ¶ 27). On March 14, 2000 plaintiffs notified defendant by letter of the Furon ESOP amendment and termination. (Stip. ¶ 32, Ex. C).

On May 22, 2000, Saint–Gobain requested a determination from the Internal Revenue Service (hereafter "IRS") that termination of the Furon ESOP would not adversely affect its qualifications as a stock bonus plan under the Code. (Stip. ¶ 29). On September 1, 2000, the IRS issued a favorable determination that the amendment and termination of the Furon ESOP did not adversely affect its tax qualification. (Stip. ¶ 30).

Plaintiffs instructed defendant to use the cash proceeds from the sale of the Furon stock in the Suspense Subfund to pay the balance of the Exempt Loans (which are now payable to Saint–Gobain Plastics). (Stip. ¶ 35). Defendant has refused to do so. (Stip. ¶ 35). However, on March 17, 2000, at plaintiffs' direction, defendant allo-

cated the assets in the Suspense Subfund, less the amount owing on the Exempt Loans, to individual participant accounts. (Stip.¶ 36). In early June 2000, Furon ESOP participants were notified of the amount of their individual account balances and informed of the various distribution options available to them. (Stip.¶ 37). Later that month, defendant began processing requests from Furon ESOP participants for distribution. (Stip.¶ 37).

Neither Saint–Gobain nor Saint–Gobain Plastics has made any contributions to the Furon ESOP since Furon was acquired by Saint–Gobain. (Stip.¶ 38). In addition, defendant has made no payments on the Exempt Loans since that time. (Stip.¶ 38). Thus, the amount in controversy is Two Million Three Hundred Thirty-two Thousand Six Hundred Fifty-three Dollars and Seventy-five Cents ($2,332,653.75), the principal amount owing on the Exempt Loans as of November 21, 1999. (Stip.¶ 24).

Plaintiffs filed suit on March 20, 2000. The Complaint sets forth two causes of action. Count One alleges that defendant's failure to repay the Exempt Loans with the cash proceeds from the sale of the Furon stock in the Suspense Subfund constitutes a breach of the terms of the Furon ESOP. Count Two alleges that defendant's failure to repay the Exempt Loans with the proceeds from the sale of the Furon stock constitutes a breach of its fiduciary duty.

With its Answer, defendant filed counterclaims against plaintiffs seeking a declaratory judgment that (1) defendant is precluded by ERISA from using the proceeds from the sale of the Furon stock in the Suspense Subfund to repay the Exempt loans; (2) the Trust Agreement requires defendant to allocate the Suspense Subfund to the participants in the Furon ESOP in proportion to their current account balances; and (3) plaintiffs' instruc-

tions to defendant to use the Suspense Subfund to repay the Exempt Loans constitutes a breach of their fiduciary duties.

The parties have filed cross-motions for summary judgment.

### STANDARD OF REVIEW

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Federal. R. Civ. P. 56(c)); *see also LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Federal. R. Civ. P. 56(c)). A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence is "merely colorable" or "not significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–250, 106 S.Ct. 2505.

## DISCUSSION

Plaintiffs claim that the terms of the Furon ESOP and the Trust Agreement require that, upon termination of the Furon ESOP, the unallocated proceeds in the Suspense Subfund be used to repay the Exempt Loans, to the extent permitted by the Code and its regulations. Any remainder is then to be allocated to individual participant accounts. Plaintiffs argue that they are entitled to summary judgment because: (1) the Code permits the use of the unallocated proceeds in the Suspense Subfund to repay the Exempt loans; and (2) repayment of the Exempt Loans with those proceeds would not violate ERISA.

Defendant claims that the Trust Agreement does not require that the unallocated proceeds in the Suspense Subfund be used to repay the Exempt Loans. To the contrary, defendant argues that once Saint–Gobain Plastics decided to terminate the Furon ESOP and cease making contributions, defendant's obligation to repay the Exempt Loans was permanently suspended. Defendant also argues that ERISA and the Code prohibit the repayment of the Exempt Loans from the unsecured unallocated assets now held in the Suspense Subfund. In addition, because Saint–Gobain Plastics has no legal right to repayment of the Exempt Loans, defendant argues that it is prohibited by the fiduciary duties imposed by ERISA from gratuitously repaying them to the benefit of Saint–Gobain Plastics and the detriment of the Furon ESOP participants.

### Furon ESOP, Trust Agreement and Loan Agreements

The parties disagree as to the effect of the termination of the Furon ESOP on defendant's obligation to repay the Exempt Loans.

Plaintiffs argue that the termination did not in any way cancel defendant's debt to Saint–Gobain Plastics. Rather, when Furon became Saint–Gobain Plastics (after merging with FCY), it retained all of Furon's rights and obligations, including its interest as a creditor on loans made to defendant to enable the Furon ESOP to purchase Furon stock. However, once the Furon ESOP was terminated, Saint–Gobain Plastics was prohibited by the terms of the plan and by the Code from making further tax deductible contributions to the Furon ESOP. At that time, the Furon

ESOP participants ceased to accrue benefits and the plan was essentially frozen. Plaintiffs argue that the Loan Agreements reflect the parties' intentions that, as long as the Furon ESOP remained ongoing, the plan sponsor would continue to make contributions sufficient to allow defendant to pay the installments due on the Exempt Loans. According to plaintiffs, a completely different scenario was to occur when the Furon ESOP was terminated because the terms of the Furon ESOP require that the balance of the Exempt Loans be repaid from the assets held in the Suspense Subfund. Plaintiffs further argue that if defendant is not required to repay the Exempt Loans, the Furon ESOP participants will receive a windfall.

As stated above, defendant argues that when Saint–Gobain Plastics stopped making payments to the Furon ESOP, defendant's obligation to repay the Exempt Loans was permanently suspended. Defendant argues that under the terms of the Loan Agreements, Furon limited its right to repayment to the extent of the contributions made by it to the Furon ESOP. If, on the other hand, Furon had perfected a security interest in the Furon stock purchased with the proceeds of the Exempt Loans or had included a default provision in the Loan Agreements requiring repayment in full of the Exempt Loans at the termination of the Furon ESOP in the absence of the prerequisite contributions, defendant admits that it would be legally obligated to repay the Exempt Loans from the Suspense Subfund.

The parties agree on several relevant facts: (1) the Exempt Loans qualified as exceptions to the general rules against transactions between "interested parties;" (2) a balance of approximately $2.3 million dollars remains on the Exempt Loans; (3) the Furon ESOP was lawfully terminated; (4) Saint–Gobain Plastics had no obligation to make contributions to the Furon ESOP

after its termination; and (5) Saint–Gobain Plastics will make no further contributions to the Furon ESOP. Thus, the real issue at this point is whether or not defendant is obligated to repay the Exempt Loans following termination of the Furon ESOP and cessation of contributions.

**Trust Agreement**

██ Plaintiffs cite § 3.3(g) of the Trust Agreement, which states,

> [I]f at the date of termination of the Plan, the Trustee remains indebted under any Company Stock Loan, the Trustee may pay accrued interest and principal and prepay the remaining principal balance of the Company Stock Loan with Shares of such Plan held in the Suspense Subfund or with the proceeds of a sale or other disposition of such Shares. If any assets remain in the Suspense Subfund after all Company Stock Loans have been fully discharged, such assets will be allocated to the Accounts of Participants.

(Stip.Ex. B). However, the language of this section is clearly permissive and not mandatory. Thus, it cannot form the basis for defendant's legal obligation to repay the Exempt Loans.

Section 3.3(d) of the Trust Agreement sets forth Furon/Saint–Gobain Plastics' allowed methods of recourse in the event of non-payment of the Exempt Loans:

> Under the terms of the Company Stock Loan or other documents executed by the Trustee in connection therewith, the lender shall not have recourse against the assets of the Trust Fund except that a Company Stock Loan may permit recourse with respect to (1) the collateral pledged as security for the Company Stock Loan, (2) contributions (other than contributions of shares) that are made to meet the Trustee's obligations under the Company Stock Loan, and (3) earnings

attributable to such collateral and the investment of such contributions. (Stip.Ex. B). Because no collateral was created, there will be no further contributions and the Trust contains no earnings, Saint–Gobain Plastics has no recourse under § 3.3(d) of the Trust Agreement in the event of defendant's non-payment. In addition, there are no other provisions in the Trust Agreement which legally obligate defendant to repay the Exempt Loans upon termination of the Furon ESOP.

### Loan Agreements

■ Defendant relies on § 5 of the 1997 Loan Agreement, which states, "Furon shall contribute to the Trustee amounts sufficient to enable the Trustee to timely pay the principal and any interest due and payable under Section 3 of this Loan Agreement." (Stip. Ex D).[4] In addition, § 9 of the 1997 Loan Agreement sets forth the parties' remedies in case of default:

(a) In the event of a default by the Trustee the full amount of the outstanding principal balance, accrued and unpaid interest (if any), and other sums then owing by the Trustee under the Note shall become immediately due and payable, without presentment, demand, protest or notice of any kind, provided, however, that Furon shall have no recourse against the assets of the Trust other than (i) any cash contributions made by Furon under Section 5 and not previously paid to Furon as loan payments, (ii) any Shares that have not been released from the suspense account and (iii) the assets which may have resulted from the investment of the contributions referred to in (i). A breach of the representations and warranties under Section 7 above and the failure to make any scheduled payment of principal of or interest on the Notes (other than solely as a result of Furon's failure to make required contributions) shall constitute a default by the Trustee hereunder. . . .

(b) If Furon shall fail to make contributions as required under Section 5 of this Loan Agreement, the Trustee's obligation to pay principal and interest due and payable under Section 3 of this Loan Agreement shall be suspended until such contribution is made, and such contributions shall be first applied to any past due interest and principal.

(Stip.Ex. D).

It is clear that defendant's failure to repay the Exempt Loans does not constitute a default under the terms of the Loan Agreements because defendant's failure to repay is solely a result of Saint–Gobain Plastics' failure to make further contributions. It is undisputed that neither Saint–Gobain nor Saint–Gobain Plastics has made contributions to the Furon ESOP since Furon was acquired by Saint–Gobain. Thus, defendant's obligation under the Loan Agreements to make payments on the Exempt Loans has been suspended. It is also undisputed that Saint–Gobain Plastics will make no further contributions to the Furon ESOP. Thus, the suspension of defendant's obligation will be permanent. Under the Loan Agreements, defendant's obligation to repay the Exempt Loans is entirely dependent on Furon/Saint–Gobain Plastics making the anticipated contributions to the Furon ESOP. In the absence of those contributions, the Loan Agreements impose on defendant no duty to repay the Exempt Loans.

---

4. Although numbered differently, all the Loan Agreements between defendant and Furon contain identical provisions.

**Furon ESOP**

■ Section 16.15 of the Furon ESOP states,

> In no event shall any part of the funds of the Plan be used for, or diverted to, any purpose other than for the exclusive benefit of Participants and their Beneficiaries under the Plan except as permitted under [29 U.S.C. § 1103(c) ] or other applicable law. Upon the transfer by a Participating Company of any money to the Trustee, all interest of the Participating Company therein shall cease and terminate.

(Stip.Ex. A). Thus, it is clear that Furon/Saint–Gobain Plastics did not retain a security interest in the assets held in the Suspense Subfund as collateral for the Exempt Loans. All of the Exempt Loans are, therefore, unsecured.

However, plaintiffs rely heavily on the March 17, 2000 amendment of § 15.4 of the Furon ESOP, which states,

> Upon or after termination of the Plan, the Board of Directors may terminate the Trust. Upon termination of the Plan, whether or not the Trust is then terminated, the Trustee may pay in a single lump sum to each Participant the full amount accredited to his individual Account. Upon the termination of the Plan, the unallocated Company Stock in the Suspense Subfund attributable to an Exempt Loan from the Company to the Trust, and any unallocated proceeds attributable to the sale or other disposition of such Company Stock, which proceeds are held in the Suspense Subfund, shall, to the extent the fair market value of such unallocated Company Stock and the amount of such unallocated proceeds does not exceed the unpaid amount of any outstanding Exempt Loan from the

Company to the Trust and to the extent permitted by the Code and Regulations, be returned to the Company in full satisfaction of such Exempt Loan. To the extent such unallocated Company Stock and unallocated proceeds cannot be returned to the Company, or the fair market value of such unallocated Company Stock and proceeds exceed the Company Stock and proceeds returned to the Company in satisfaction of an outstanding Exempt Loan, it shall be allocated to the accounts of Participants upon termination of the Plan in proportion to their account balances. Without limiting the foregoing, any such distributions may be made in cash, Company Stock, other property, or any combination, as the Committee in its sole discretion may direct.

(Deft.Ex. C).[5]

Although defendant is not a party to the Furon ESOP, § 1.4 of the Trust Agreement states that the Furon ESOP and the Trust Agreement "shall be deemed to be and construed as a single document." Thus, the central question becomes whether or not the Code and its regulations permit the repayment of the Exempt Loans with the proceeds held in the Suspense Fund. Since defendant must also comply with ERISA, regardless of the terms of the Furon ESOP, Trust Agreement or Loan Agreements, ERISA and the Code will be considered together.

### ERISA and the Internal Revenue Code

Defendant argues that even if the Furon ESOP, Trust Agreement and Loan Agreements do require it to repay the Exempt Loans, ERISA and the Code prohibit it from doing so with the proceeds from the

---

5. The only significant changes in § 15.4 are (1) unallocated proceeds, as well as unallocated stock, are accounted for in the amended version; and (2) its provisions are triggered by termination of the Trust or termination of the Plan, regardless of whether or not the Trust is terminated.

sale of the unallocated Furon stock held in the Suspense Subfund. According to defendant, the only moneys which may be used to repay an ESOP sponsor's exempt loans are those that come from (1) collateral; (2) contributions; or (3) the proceeds of collateral or contributions. Since Saint-Gobain Plastics has stopped making contributions and did not secure the Exempt Loans with collateral, defendant argues that there are no funds which could lawfully be used to repay the Exempt Loans. Defendant argues that it can not follow plaintiffs' instructions to repay the Exempt Loans with the proceeds in the Suspense Subfund if doing so would be inconsistent with ERISA. Defendant claims that it is bound to comply with the terms of the Trust Agreement and ERISA, rather than an inconsistent term in the Furon ESOP.

Plaintiffs argue that ERISA permits, but does not require, exempt loans to be secured. Plaintiffs also argue that the Code permits repayment of the Exempt Loans with the assets held in the Suspense Subfund. In addition, plaintiffs urge this Court to disregard the two Department of Labor opinion letters cited by defendant as poorly reasoned and inconsistent with the law.

As stated above, the Exempt Loans were structured so as to avoid the prohibitions against transactions involving interested parties and trustee self-dealing contained in ERISA, 29 U.S.C. § 1106, and to be exempt from excise taxes imposed under the Code, 26 U.S.C. § 4975. 29 C.F.R. § 2550.408b–3 sets forth the labor regulations governing loans to ESOPs. 26 C.F.R. § 54.4975–7 is the parallel Code regulation. Exempt loans are subject to special scrutiny by the Department of Labor and the Internal Revenue Service to ensure that they are primarily for the benefit of ESOP participants and their beneficiaries. 29 C.F.R. § 2550.408b–3(b)(2); 26 C.F.R. 54.4975–7(b)(2)(ii). The

proceeds of an exempt loan may only be used to acquire qualifying employer securities, to repay the loan or to repay a prior exempt loan. 29 C.F.R. § 2550.408b–3(d); 26 C.F.R. 54.4975–7(b)(4).

Plaintiffs cite 26 C.F.R. § 54.4975–11(d)(3) in support of their claim that the Code does not prohibit the use of the proceeds from the sale of Furon stock held in the Suspense Subfund to repay the Exempt Loans. 26 C.F.R. § 54.4975–11(d)(3) states,

> Income with respect to securities acquired with the proceeds of an exempt loan must be allocated as income of the plan except to the extent that the ESOP provides for the use of income from such securities to repay the loan.

Plaintiffs argue that because § 15.4 of the ESOP provides for repayment of the Exempt Loans at the termination of the Furon ESOP, the proceeds in the Suspense Subfund may be used to repay the Exempt Loans rather than being counted as income and distributed to the Furon ESOP participants.

■ 29 C.F.R. § 2550.408b–3(e) and 26 C.F.R. 54.4975–7(b)(5) provide that an exempt loan must be without recourse against the ESOP. As noted above, the Furon ESOP complies with these regulations. (Stip. Ex. B § 3.3(d)). In addition, both regulations state,

> No person entitled to payment under the exempt loan shall have any right to assets of the ESOP other than:
>
> (1) Collateral given for a loan,
>
> (2) Contributions (other than contributions of employer securities) that are made under an ESOP to meet its obligations under the loan, and
>
> (3) Earnings attributable to such collateral and the investment of such contributions.

29 C.F.R. § 2550.408b–3(e); 26 C.F.R. 54.4975–7(b)(5). Furon chose not to obtain collateral for the Exempt Loans. In addition, it is undisputed that no further contributions will be made to the Furon ESOP, and there are no earnings attributable to collateral or contributions. Thus, defendant argues, the Trust contains no permissible source of funds with which to repay the Exempt Loans. Plaintiffs argue that these regulations do not bar repayment of the Exempt Loans with the proceeds of the Suspense Subfund because they merely describe a lender's recourse in enforcing its rights under the loan; they do not set forth the exclusive sources for permissible repayments.[6]

This Court finds plaintiffs' argument persuasive. 29 C.F.R. § 2550.408b–3(e) and 26 C.F.R. 54.4975–7(b)(5) do not provide for the only permissible sources of repayment of exempt loans. They merely state that no lender shall have any rights, including any right to repayment, in any ESOP funds except from the three sources listed.

■ The Department of Labor reached similar conclusions in two opinion letters dated December 23, 1993 (hereafter "1993 letter") and December 17, 1997 (hereafter "1997 letter"). 1993 ERISA LEXIS 35, 1997 ERISA LEXIS 55. Although opinion letters need not be given deference by this Court under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), they may have persuasive value if "thoroughly considered and well reasoned." *Elwell v. University Hosp. Home Care Services*, 76 F.Supp.2d 805, 808–809 (N.D.Ohio 1999) (stating that Department of Labor opinion was entitled to deference because it was "a thorough, well reasoned and accurate interpretation of the [relevant] regulation"). In the 1993 letter, the Department of Labor stated,

[W]hile 2550.408b–3(e) precludes recourse to other than the above-enumerated assets of the ESOP by persons entitled to repayment of a loan that is exempt under [29 U.S.C. § 1108], it does not serve to limit the use of other assets by the fiduciary of an employee stock ownership plan to repay an exempt loan.

1993 ERISA LEXIS 35 at *3. *See also* 1997 ERISA LEXIS 55 at *5 ("The Department believes that the ESOP loan would not fail to be exempt solely because the appropriate plan fiduciary used assets of the ESOP other than those enumerated in section 2550.408b–3(e) to repay the loan.").

Thus, defendant's voluntary compliance with § 15.4 of the Furon ESOP would not cause it to violate 29 C.F.R. § 2550.408b–3(e). Thus, this Court finds that repayment of the Exempt Loans from the proceeds held in the Suspense Subfund would not violate the Code or its regulations. However, this Court must still determine if defendant's compliance with § 15.4 would violate ERISA.

*Defendant's Fiduciary Duties Under ERISA*

■ Defendant agrees with plaintiffs that, where an exempt loan is due and

6. Plaintiffs also argue that if the regulations are interpreted in the manner suggested by defendant, this Court will be creating from whole cloth a security requirement for exempt loans and effectively amending the regulations. Contrary to plaintiffs' argument, enforcement of the regulations as written will not impose a security requirement on all exempt loans. If Saint–Gobain Plastics had chosen to maintain the Furon ESOP and continue making the anticipated contributions to the plan, it would have had a right to those contributions, even in the absence of collateral. However, since Furon declined to take a security interest in the Furon stock and Saint–Gobain Plastics decided to terminate the Furon ESOP before the Exempt Loans were repaid, it has no right to any of the funds currently held in the Suspense Subfund.

payable, a trustee's fiduciary duties will not prevent repayment of the loan. However, defendant argues that, since it has no legal obligation to repay the Exempt Loans, doing so gratuitously would constitute a violation of its fiduciary duties under ERISA. Specifically, defendant argues that repayment of the Exempt Loans without legal obligation to do so would inure benefits to Saint–Gobain Plastics to the detriment of the Furon ESOP participants.

Plaintiffs argue that ERISA's general fiduciary duties do not apply to the Exempt Loans because they do not apply to exempt transactions under 29 U.S.C. § 1108.

Defendant's fiduciary duties as trustee of the Furon ESOP are set forth in 29 U.S.C. §§ 1103, 1104 and 1106. Section 1103(c) states that "the assets of [an ESOP] plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." Section 1104(a) sets forth the relevant "prudent man" standard of care:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-

　(A) for the exclusive purpose of:

　　(i) providing benefits to participants and their beneficiaries; and

　　(ii) defraying reasonable expenses of administering the plan;

　(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

　(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

　(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104. Section 1106(a)(1)(D) states that, except as provided in § 1108, a fiduciary shall not cause an ESOP to engage in a transaction if it knows that such transaction constitutes a direct or indirect transfer to or use for the benefit of a party in interest of any assets of the ESOP.

Again, the Department of Labor opinion letters are helpful. The facts of the 1993 letter are nearly identical to the facts of this case, except that they involve a prospective transaction. 1993 ERISA LEXIS 35 at *1. In that situation, an ESOP executed a promissory note which was guaranteed by the plan's sponsor. *Id.* The ESOP used the loan proceeds to purchase corporate stock, which was not formally pledged as security. *Id.* Subsequently, the sponsor received an offer to purchase all of its shares. *Id.* The sponsor accepted the offer and the corporate stock held in the ESOP's suspense account was tendered. *Id.* at *2. The contemplated merger agreement provided for the prepayment in full of the exempt loans with the cash held in the suspense account and the allocation of the remaining ESOP funds to the individual participants' accounts. *Id.* As stated above, the Department of Labor determined that the fiduciary's payment of the exempt loans with the proceeds in the suspense account was not prohibited by 29 C.F.R. § 2550.408b–3(e). *Id.* at *3. The letter goes on to state,

However, any such action would be subject to the general fiduciary rules of ERISA. In this regard the appropriate plan fiduciary should consider the appli-

cation of [29 U.S.C. §§ 1103, 1104 and 1106].

\*   \*   \*   \*   \*   \*

In particular, the fiduciary must ascertain under the above-described circumstances whether the lender has recourse to employer securities in the suspense account (or proceeds received from the sale of such securities) in the event of default—i.e., whether the securities serve as collateral for the loan. In the absence of such a determination, repayment by the plan of the balance remaining on the loan would appear to violate [29 U.S.C. §§ 1103, 1104 and 1106] because, assuming the loan complied with the terms of 29 C.F.R. 2550.408b–3, the lender would have no right to employer securities held in the suspense account and the plan would have no legal obligation to repay the loan with the proceeds from the sale of the securities.

*Id.* at \*3–\*5.

The Department of Labor reached the same conclusion in the 1997 letter. 1997 ERISA LEXIS 55 at \*6. In that situation, the ESOP had been terminated and no further contributions were to be made. *Id.* at \*1. The ESOP then defaulted on an exempt loan which was used to purchase corporate shares. *Id.* at \*2–\*3. The terms of the ESOP provided that, upon its termination, all unallocated shares must be sold to satisfy any outstanding loan and the proceeds of the sale paid to the ESOP lender. *Id.* at \*3. However, the corporate shares were not formally pledged as collateral. The Department stated,

> In the absence of a determination by the plan fiduciary that the lender has an enforceable legal interest in the unallocated employer securities in the suspense account, repayment by the plan of the balance remaining on the loan through the sale or exchange of such

securities would appear to violate [29 U.S.C. §§ 1103, 1104 and 1106].

*Id.* at \*6.

This Court finds the 1993 and 1997 letters to be thoroughly considered, well-reasoned and accurate interpretations of ERISA, the Code and the applicable regulations.

Section 15.4 of the Furon ESOP does not, on its own, grant Saint–Gobain Plastics a security interest in the proceeds from the sale of the Furon stock. If defendant were to repay the Exempt Loans in the absence of a security interest in those proceeds, a benefit in the amount of approximately $2.3 million dollars would inure to Saint–Gobain Plastics to the detriment of the Furon ESOP participants. If defendant were to repay the Exempt Loans when it has no legal obligation to do so, it would not be acting solely in the interest of the participants of the Furon ESOP. For clearly it is in the participants' interest to maximize the amount of their benefits and not have their benefits reduced by payment of unsecured, unenforceable debts. Instead, payment of the Exempt Loans by defendant in this situation would benefit only Saint–Gobain Plastics-precisely the party who is never intended to benefit from an ESOP.

Plaintiffs' argument that ERISA's general fiduciary obligations do not apply to exempt transactions is contradicted by the plain language of § 16.15 of the Furon ESOP, which states,

> In no event shall any part of the funds of the Plan be used for, or diverted to, any purpose other than for the exclusive benefit of Participants and their Beneficiaries under the Plan except as permitted under [29 U.S.C. § 1103(c) ] or other applicable law.

(Stip.Ex. A).

In addition, several courts have held that a trustee retains its fiduciary duties

even when engaging in exempt transactions under 29 U.S.C. § 1108. For example, in *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir.1995), the court recognized that "Congress carved out specific exceptions to certain fiduciary duties in the case of an ESOP." An ESOP fiduciary need not satisfy the duty under § 1104(a)(1)(C) to diversify the ESOP's investments. *Id.* (citing *Martin v. Feilen*, 965 F.2d 660 (8th Cir.1992)). ESOP fiduciaries are also exempted from the prohibition in § 1106(b)(1) against self-dealing. *Id.* However, the court found that Congress' intent with regard to a fiduciary's general duties was clear:

> [T]he statutory exemptions for ESOPs in ERISA do not relieve a fiduciary from the general fiduciary responsibility provisions of § 1104 which, among other things, require a fiduciary to discharge his duties respecting the plan solely in the interests of plan participants and beneficiaries and in a prudent fashion, nor does it affect the requirement that a plan must be operated for the exclusive benefit of employees and their beneficiaries.

*Id.* (internal punctuation omitted). *See also Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir.1983); *Eaves v. Penn*, 587 F.2d 453, 459 (10th Cir.1978).

There is no basis for plaintiffs' claim that defendant is not bound by its fiduciary duties to act solely in the interests of plan participants and operate the Furon ESOP for their exclusive benefit.

Thus, this Court finds that if defendant were to repay the Exempt Loans with the assets currently held in the Suspense Subfund, it would violate its fiduciary duties to the Furon ESOP participants under ERISA.

### CONCLUSION

For these reasons, Plaintiffs' Motion for Summary Judgment is denied and Defendant's and Counterclaim Plaintiff's Motion for Summary judgment is granted.

IT IS SO ORDERED.

### *Judgment Entry*

This Court, having issued its Memorandum of Opinion and Order granting defendant's Motion for Summary Judgment (Doc. 17), hereby enters judgment in favor of defendant and against plaintiffs.

IT IS SO ORDERED.